DECIDED NOVEMBER 3, 2008.

*Gary V. Bowman*, for appellant (case no. S08A1614).
*J. Scott Key*, for appellant (case no. S08A1615).
*Michelle R. Clark*, for appellant (case no. S08A1616).
*Tommy K. Floyd, District Attorney, Alicia C. Grant, Assistant District Attorney, Thurbert E. Baker, Attorney General, David A. Zisook, Assistant Attorney General*, for appellee.

## S08A1629. BUTLER v. THE STATE.
(669 SE2d 118)

MELTON, Justice.

Following a jury trial, Marquce Butler appeals his convictions for felony murder and conspiracy to commit aggravated sodomy,[1] contending, among other things, that the evidence was insufficient to

---

[1] On January 11, 2005, Butler was indicted in Habersham County for malice murder, felony murder based on underlying felonies of aggravated assault and aggravated sodomy, conspiracy to commit aggravated sodomy, aggravated sodomy, and necrophilia. Following a joint trial with his co-defendant, Maurice Tobler, on May 8-12, 2006, Butler was convicted for felony murder and conspiracy to commit aggravated sodomy. On May 12, 2006, Butler was sentenced to life imprisonment without the possibility of parole for felony murder and 15 concurrent years for conspiracy to commit aggravated sodomy. Butler filed a motion for new trial on June 12, 2006 and amended it on March 12, 2007. The motion for new trial was denied on April 10, 2007, and Butler timely filed a notice of appeal on April 25, 2007. Butler's case was docketed in this Court on June 10, 2008, and submitted for decision on the briefs.

support the verdict. For the reasons set forth below, we affirm.

1. Viewed in the light most favorable to the verdict, the record shows that, around midnight on February 21, 2004, a guard at the Lee Arrendale State Prison in Alto, Georgia, was alerted to a medical emergency in Butler's jail cell. Once there, the guard found the window on the cell door obstructed, and, when the obstruction was removed, the guard could see Butler and a second inmate, Maurice Tobler, seated on the bed. The guard also saw a third inmate, Wayne Boatwright, lying on the floor, slumped against a radiator, and apparently unconscious. The presence of other inmates in Butler's cell violated internal prison policies.

After entering the cell and handcuffing Butler and Tobler, the guard discovered that Boatwright was not breathing, had no pulse, and had blood running from his nose. At that point the guard made the comment that, if Butler and Tobler had meant to kill Boatwright, they had done a good job. Tobler immediately and voluntarily replied, "[w]e didn't mean to kill him." Attempts to revive Boatwright were unsuccessful, and he died at the scene.

Early the next morning, agents from the Georgia Bureau of Investigation conducted interviews. In his interview, Butler initially stated that Boatwright had merely passed out and fallen to the ground on his own. Tobler, on the other hand, stated that, at the time of Boatwright's death, another inmate named Travis McCleod had choked Boatwright to death during a fight in the cell. When asked what Butler might have said about him in his prior interview, Tobler indicated that Butler was supposed to say that Tobler had not had any involvement in Boatwright's death. After interviewing Tobler, GBI agents resumed their talks with Butler. At that time, Butler changed his prior story of events, stating that Boatwright's death was the result of an altercation with McCleod. He further admitted that, after Boatwright had been choked into unconsciousness, he, Tobler, and McCleod merely sat on his bed and smoked a cigarette instead of seeking assistance.

In a subsequent interview, McCleod admitted that he had strangled Boatwright in the presence of Tobler and Butler. According to McCleod, Boatwright became angry after McCleod asked him if he were a homosexual. He said Boatwright responded by punching him in the face, and that in the ensuing fight he had choked Boatwright until Boatwright collapsed.

At trial, McCleod acknowledged that he, Tobler, and Butler were good friends and that they were together almost every day. Another inmate, James Cantrell, testified that the three men "ran in a little gang," led by Tobler. He also testified that Tobler told him multiple

times that he wanted to have sex with Boatwright, even if forced,[2] and one such time occurred within hours of the murder. Cantrell further recounted that, just prior to the murder, he had seen Butler waiting suspiciously outside of his cell, and Cantrell believed that Butler and Tobler must have been planning something.

As part of the investigation, a rape kit was performed on Boatwright's body. Sperm cells matching Tobler's DNA were discovered. No conclusions could be reached as to when the sperm was deposited, but a crime lab serologist testified that sperm would be unlikely to last longer than 24 hours due to normal bodily functions and bathing.

Prior to the joint trial of Butler and Tobler, McCleod pled guilty to murder and conspiracy to commit aggravated sodomy.

This evidence was sufficient to enable the jury to find Butler guilty of the crimes for which he was convicted beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Butler contends that the introduction of Tobler's statement at the scene of the crime that "we didn't mean to kill him" violated his Sixth Amendment confrontation rights. See *Bruton v. United States*, 391 U. S. 123 (88 SC 1620, 20 LE2d 476) (1968). We disagree.

Tobler's voluntary utterance at the scene was admissible pursuant to the res gestae exception to the rule against hearsay. See OCGA § 24-3-3 ("Declarations accompanying an act, or so nearly connected therewith in time as to be free from all suspicion of device or afterthought, shall be admissible in evidence as part of the res gestae."). See also *Tesfaye v. State*, 275 Ga. 439 (6) (569 SE2d 849) (2002). Because Tobler's statement was admissible under the res gestae exception to the rule against hearsay, Butler's right to confrontation under *Bruton* was not violated.

> [B]ecause *Bruton* is grounded in a defendant's right of confrontation, and because *Bruton* was a case in which a co-defendant's confession implicating Bruton was not admissible against Bruton under any recognized exception to the rule against hearsay, it has been held that *Bruton* has no application when a statement by a defendant's partner in crime is received under some exception to the hearsay rule [such as res gestae].

(Punctuation and footnotes omitted.) *Burgess v. State*, 278 Ga. 314, 315 (1) (602 SE2d 566) (2004).

---

[2] This testimony was corroborated by other inmates who had heard Tobler state that he intended to have sex with Boatwright.

Accordingly, the trial court did not err by admitting Tobler's statement into evidence.

3. Butler contends that the trial court erred by denying his motion for a mistrial following disruptions in the courtroom caused by members of Boatwright's family. The record shows, however, that following these outbursts, the trial court took control of the courtroom and instructed the jury to disregard the interruptions. "In light of the prompt, thorough, and curative action taken by the trial court, we cannot say that the outburst[s] denied appellant a fair and impartial trial." (Citation omitted.) *Byrd v. State*, 262 Ga. 426, 427 (1) (420 SE2d 748) (1992).

4. Butler contends that the trial court erred by giving confusing limiting instructions to the jury regarding evidence of similar transactions committed by his co-defendant, Tobler. The record shows that, immediately prior to testimony that Tobler had a previous conviction for rape, the trial court instructed the jury that "[s]uch evidence, if any, . . . may not be considered by you as to the other defendant. . . . [Y]ou are strictly limited in your consideration of the evidence as to state of mind, and in any regard may only be considered by you as to this defendant, and not the other defendant." The trial court repeated this instruction in its final charge to the jury.

Butler now takes issue with this limiting instruction, contending that, in order to prevent the jury from becoming confused, the trial court should have specifically named Butler instead of referring to him as "the other defendant."[3] In this case, however, there were only two co-defendants being tried, the limiting instruction directly preceded the evidence of Tobler's prior crime, and the jury was clearly instructed that evidence could not be used against "the other defendant," which could have only been referring to Butler. Under these circumstances, Butler has not shown that the jury was confused by the instruction, which was adequate to inform the jury that the similar transaction evidence was admissible against Tobler only. See *Guyton v. State*, 281 Ga. 789 (4) (642 SE2d 67) (2007).

5. Finally, Butler contends that there was a fatal variance between the indictment and the evidence presented at trial with regard to his conviction for felony murder. In the indictment, Butler was charged with felony murder based on the underlying felonies of aggravated assault and aggravated sodomy, and, in a separate count, he was charged with conspiracy to commit aggravated sodomy.

---

[3] The record shows that, at the time that the evidence was admitted, Butler made no objection to the limiting instruction. Butler did, however, take exception to the final charge given to the jury.

During jury deliberations, the jury sent out a written question inquiring whether conspiracy to commit aggravated sodomy was a felony. Based on this question, Butler now speculates that the jury may have based his conviction for felony murder on the conspiracy charge rather than the two underlying felonies set forth in his indictment. There is no evidence that this was the case, however, and it would be inappropriate for this Court to inquire into the jury's deliberations based on mere speculation. See, e.g., *Turner v. State*, 283 Ga. 17 (2) (655 SE2d 589) (2008).

*Judgment affirmed. All the Justices concur.*

DECIDED NOVEMBER 3, 2008.

*Drew W. Powell*, for appellant.

*Michael H. Crawford*, District Attorney, *Thurbert E. Baker*, Attorney General, *Elizabeth A. Harris*, Assistant Attorney General, for appellee.