296 Ga. 731
FINAL COPY

S14A1715.  SMITH v. THE STATE.

THOMPSON, Chief Justice.

Appellant Perrie Quintez Smith was found guilty of malice murder, felony murder, aggravated assault, possession of a firearm during the commission of a felony, and possession of a firearm by a first offender probationer in connection with the shooting death of Raynell Cornell.[1]  On appeal, appellant claims he received ineffective assistance of counsel at trial and that the trial court erred in refusing to charge the jury on voluntary manslaughter.  Finding

[1] The crimes occurred on October 1, 2010.  Appellant was indicted by a DeKalb County grand jury on January 28, 2011, on charges of malice murder, felony murder (two counts), aggravated assault, possession of a firearm during the commission of a felony and possession of a firearm by a first offender probationer.  Following a jury trial from February 13-17, 2012, appellant was found guilty of malice murder, one count of felony murder, aggravated assault, possession of a firearm during the commission of a felony and possession of a firearm by a first offender probationer.  Upon receipt of the jury's verdict, the trial court sentenced appellant to life on the malice murder count, five years consecutive for possession of a firearm during the commission of a felony, and five years concurrent with the life sentence for possession of a firearm by a first offender probationer.  The felony murder count was vacated by operation of law, and the aggravated assault count was merged with the malice murder count for sentencing. See Malcolm v. State, 263 Ga. 369 (434 SE2d 479) (1993).  Appellant filed a timely motion for new trial on March 14, 2012 and an amended motion on March 10, 2014.  Following a hearing held March 19, 2014, the trial court entered an order June 3, 2014 denying appellant's motion for new trial.  Appellant filed a notice of appeal on June 30, 2014, and the appeal was docketed in this Court for the September 2014 term and submitted for a decision on the briefs.

no error, we affirm.

1. Viewed in the light most favorable to the jury's verdict, the evidence at trial revealed that on October 1, 2010 a fight broke out between adults at a children's birthday party hosted by a relative of the appellant. When the fight escalated, appellant's grandmother called him to come to the party to help his cousins. Appellant and his brother, Andre Woods, drove to the party with Rocheford Harris in Harris's white Jeep Cherokee.

While at the party, Harris noticed appellant was holding a black handgun. Soon thereafter, Harris heard gunshots and ran to his Jeep. Appellant and Woods also returned to Harris's Jeep, and the three men drove away from the scene. Before they could exit the apartment complex, however, the Jeep was stopped by police.[2] Appellant, Harris and Woods were detained, their cell phones were collected by the police, and the Jeep was impounded until a search warrant could be obtained. Upon processing the scene of the shooting, police found the victim unresponsive on the ground with a single gunshot wound to the

_____

[2] Having responded to an earlier call about fighting at the complex, the police were still in the vicinity and arrived quickly when called about the shooting. Upon their arrival, the officers were told by witnesses that the shooter was an African-American male with dreadlocks wearing dark clothing who left the scene in a white Jeep. This description fit both appellant and Harris's vehicle.

2

chest. Police also recovered three .380 shell casings at the scene. A subsequent search of Harris's Jeep revealed two guns beneath the back seat, one of which was a black Cobra .380 caliber handgun. Further investigation matched the Cobra .380 obtained from the Jeep to the bullet recovered from the victim's body.

Shortly before trial, an investigator from the district attorney's office obtained a search warrant to gather contacts, text messages, call logs, photographs, ring tones, audio and video from appellant's cell phone and four others collected by the police from individuals involved in the incident. A photograph taken three months prior to the incident showing appellant holding a handgun similar to the Cobra .380 recovered from the Jeep was extracted from appellant's cell phone and admitted into evidence.

We conclude the evidence was sufficient to enable a rational trier of fact to find appellant guilty beyond a reasonable doubt of the crimes for which he was convicted. See Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Appellant contends that his trial counsel was constitutionally ineffective for several reasons. In order to prevail on a claim of ineffective

assistance of counsel, appellant must show both that his trial counsel's performance was deficient and that there is a reasonable probability that, but for counsel's errors, the outcome of the trial would have been different. See Strickland v. Washington, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984). "Failure to satisfy either prong of the Strickland test is sufficient to defeat a claim of ineffective assistance, and it is not incumbent upon this Court to examine the other prong." Hargrove v. State, 291 Ga. 879, 881 (734 SE2d 34) (2012). To establish deficient performance, an appellant must overcome the strong presumption that his or her counsel's conduct falls within the broad range of reasonable professional conduct and "show that his counsel performed in an objectively unreasonable way, considering all circumstances and in the light of prevailing professional norms." Prince v. State, 295 Ga. 788, 791 (764 SE2d 362) (2014). Further, although both the performance and prejudice components of an ineffectiveness inquiry involve mixed questions of law and fact, a trial court's factual findings made in the course of deciding an ineffective assistance of counsel claim will be affirmed by the reviewing court unless clearly erroneous. See Strickland, supra, 466 U. S. at 698.

(a) Appellant first asserts his trial counsel was ineffective for failing to

file a motion to suppress the evidence obtained from appellant's cell phone. Appellant contends that probable cause did not exist for the issuance of a warrant allowing a search of the entire contents of his cell phone and claims he was prejudiced by counsel's failure to suppress the photograph recovered therefrom which showed appellant holding a gun.[3] Where, as here, trial counsel's failure to file a motion to suppress is the basis for a claim for ineffective assistance, the burden is on the appellant to make a strong showing that the damaging evidence would have been suppressed had counsel made the motion. See Biggs v. State, 281 Ga. 627, 631 (4) (b) (642 SE2d 74) (2007). Appellant has failed to meet this burden.

In this case, the affidavit on which the warrant was based stated that the five cell phones to be searched had been secured by DeKalb County police officers and detectives during the course of their investigation from different locations and different individuals involved in the incident. The affidavit listed

_____

[3] The record reveals that appellant's trial counsel was an experienced criminal defense attorney and part-time magistrate judge who testified at the motion for new trial hearing that, in his experience, it was common to find relevant evidence in cell phones. While trial counsel did not file a motion to suppress the photographs obtained from appellant's cell phone on constitutional grounds, the record shows that he did file a motion in limine seeking to exclude the photograph of appellant holding a gun arguing that the picture, taken some three months prior to the shooting, was not relevant and that its admission into evidence would be more prejudicial than probative.

the nature of the crime and outlined the police investigation, including statements from witnesses reporting that following an altercation between residents of an apartment complex on October 1, 2010, family members of one of the parties involved allegedly telephoned additional family members for assistance. According to the affidavit, appellant was contacted by a family member of one of the parties, and he subsequently contacted Harris to ask for a ride to the scene for himself and Woods. The affidavit further provided that witnesses at the scene described the shooter as a person matching appellant's description who fled the scene in a white Jeep Cherokee; that officers responding to a 911 call about the shooting stopped appellant, Harris and Woods in a white Jeep Cherokee down the street from the incident shortly thereafter; and that all three men admitted to having been at the location when the incident took place.

Although the affidavit did not specify to whom each of the cell phones belonged, it provided the issuing magistrate with sufficient information to make a practical, common sense decision that there was a fair probability that evidence of the crime would be found on the items to be searched. See State v. Palmer, 285 Ga. 75, 77 (673 SE2d 237) (2009). As previously noted by this

6

Court, "[t]he test for probable cause is not a hypertechnical one to be employed by legal technicians, but is based on the 'factual and practical considerations of everyday life on which reasonable and prudent men . . . act.'" State v. Hunter, 282 Ga. 278, 278 (646 SE2d 465) (2007), quoting Curry v. State, 255 Ga. 215, 217 (1) (336 SE2d 762) (1985) (citation and punctuation omitted). Further, where the basis for the issuance of a search warrant has been challenged, this Court has stated that

> [d]oubtful cases should be resolved in favor of upholding the determination that issuance of a warrant was proper, reflecting both a desire to encourage use of the warrant process by police officers and a recognition that once a warrant has been obtained, intrusion upon interests protected by the Fourth Amendment is less severe than otherwise may be the case.

Glenn v. State, 288 Ga. 462, 466 (2) (d) (704 SE2d 794) (2010) (citations and punctuation omitted).

In this case, the issuing magistrate granted the State's application for a warrant to search five cell phones, including appellant's, for specific information contained therein "that would indicate the planning or premeditation to commit murder, and or any indication of participation in said crime." See Reaves v. State, 284 Ga. 181, 184 (2) (d) (664 SE2d 211) (2008)

7

(warrants containing residual clauses limiting the items to be seized to those relevant to the crimes identified are sufficiently particular and do not authorize a general search in violation of the Fourth Amendment).   It appears from the record that the magistrate had a substantial basis on which to conclude sufficient probable cause existed to support the warrant issued, thus appellant cannot make a strong showing that a motion to suppress the evidence obtained from his cell phone based on a lack of probable cause would have been granted.[4]   As trial counsel's performance cannot be deemed deficient due to his failure to make a meritless motion, appellant's ineffective assistance of counsel claim lacks merit.

(b) A review of the record reveals that while highlighting during closing argument the cumulative circumstantial evidence of appellant's guilt and offering jurors a method by which they could assess this evidence, the

---

[4] Although appellant additionally contends that the scope of the search warrant issued in this case was overly broad in that the affidavit failed to state any reasonable grounds from which to believe that evidence of the shooting would be found in photographs recovered from the cell phones, photographs often provide evidence of a fact or event.  See Henson v. State, 314 Ga. App. 152, 156 (723 SE2d 456) (2012).  Moreover, appellant's argument relies on cases involving the warrantless search of cell phones incident to an arrest which are inapplicable to this case in which a search warrant was obtained.  See Hawkins v. State, 290 Ga. 785, 788 (723 SE2d 924) (2012) (holding the scope of a search incident to an arrest of a suspect's cell phone "'must be limited as much as is reasonably practicable by the object of the search'").  But see Riley v. California, ___ U. S. ___ (IV) (134 SCt 2473, 189 LE2d 430) (2014) (search incident to an arrest exception does not apply to cell phones and, except under exigent circumstances or other case-specific exceptions, the warrantless search of a cell phone is unconstitutional).

prosecutor suggested jurors use their common sense and consider the evidence as if it were being reported in a newspaper. Appellant contends his trial counsel was ineffective for failing to object to this portion of the State's closing argument and alternatively contends that it was plain error for the trial court to fail to take curative measures in the absence of an objection. See OCGA § 17-8-75. Both contentions lack merit.

> Whether to object to a particular part of a prosecutor's closing argument is a tactical decision, see Westmoreland v. State, 287 Ga. 688, 695-696 (699 SE2d 13) (2010), and counsel's decision not to make an objection must be patently unreasonable to rise to the level of deficient performance, see Westbrook v. State, 291 Ga. 60, 64 (727 SE2d 473) (2012).

Peoples v. State, 295 Ga. 44, 60 (757 SE2d 646) (2014). At the motion for new trial hearing, appellant's trial counsel testified that he normally does not object to another lawyer's closing argument unless it is egregious. Counsel stated that he had heard the prosecutor use this newspaper analogy in other cases, and he strategically decided not to object, choosing instead to comment on the prosecution's "theatrics" in his own closing as a way to turn the prosecutor's remarks to appellant's advantage. Appellant has not shown how his trial counsel's conscious decision to remain silent and use the prosecutor's argument

9

for the benefit of the defense was an unreasonable strategy under the circumstances. See Smith v. State, 288 Ga. 348, 354 (703 SE2d 629) (2010). See also Smith v. State, 284 Ga. 599, 602 (2) (a) (669 SE2d 98) (2008) (Where the remarks complained of are based on evidence properly before the jury, wide latitude is afforded the prosecution in closing argument.).

Equally unavailing is appellant's assertion that the trial court should have interposed its own corrective action pursuant to OCGA § 17-8-75.[5] The prosecutor's argument did not include any statements that were not supported by the evidence in this case. Moreover, "a trial judge has no obligation under OCGA § 17-8-75 to rebuke a prosecuting attorney or give a curative instruction in the absence of a timely objection." Powell v. State, 291 Ga. 743, 746 (733 SE2d 294) (2012). See Scott v. State, 290 Ga. 883, 885 (2) (725 SE2d 305) (2012) ("In the appeal of a non-capital case, 'the defendant's failure to object to the State's closing argument waives his right to rely on the alleged

---

[5] OCGA § 17-8-75 provides:
Where counsel in the hearing of the jury make statements of prejudicial matters which are not in evidence, it is the duty of the court to interpose and prevent the same. On objection made, the court shall also rebuke the counsel and by all needful and proper instructions to the jury endeavor to remove the improper impression from their minds; or, in his discretion, he may order a mistrial if the prosecuting attorney is the offender.

10

impropriety of that argument as a basis for reversal.' [Cit.]").

(c) Appellant additionally contends his trial counsel was ineffective for failing to object to the prosecutor's remarks to the jury during closing argument that "[c]rime is a cancer that eats away at society," and that the jury should "stand in the way of injustice."[6] Prosecutors are prohibited from injecting extrinsic and prejudicial statements which have no basis in the evidence into closing arguments. See Bell v. State, 263 Ga. 776, 777 (439 SE2d 480) (1994). However, general appeals to enforce the criminal law for the safety of the community have long been held by this Court to be within the bounds of permissible argument. See Spencer v. State, 287 Ga. 434, 439-440 (696 SE2d 617) (2010); Davis v. State, 266 Ga. 801, 804 (8) (471 SE2d 191) (1996). Judged in the context in which they were made, we find the alleged offending remarks merely reflected the State's theory that the motive for the crime was vigilante justice and generally and properly appealed to the jury to enforce the

---

[6] Having stated early in his closing argument that the motive for the shooting was vigilante justice with appellant deciding to be "[a] vigilante judge, vigilante juror, and vigilante executioner," the prosecutor concluded his closing with the following statement:

> Crime is a cancer that eats away at society. And at some point, we, as citizens, have to stand in the way of it. I'm asking you to stand in the way of injustice. Stand in the way of a vigilante judge. Stand in the way of a vigilante juror. Stand in the way of a vigilante executioner, and find [appellant] . . . guilty of each and every charge in this indictment.

11

law for the safety of the community.  See Scott, supra, 290 Ga. at 885; Smith, supra, 284 Ga. at 602 (2) (a).  Inasmuch as the State's closing argument was not improper on the basis asserted by appellant, trial counsel's failure to object to the State's argument is not evidence of ineffective assistance.  See Scott, supra, 290 Ga. at 889 (7) (a).  Accordingly, this ineffective assistance of counsel claim also lacks merit.

3.  Finally, appellant contends that the trial court erred in refusing to charge the jury on the lesser included offense of voluntary manslaughter.  To support a charge of voluntary manslaughter, there must be evidence that the accused "act[ed] solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person[.]"  OCGA § 16-5-2 (a).  Whether such evidence exists is a question of law, but even slight evidence showing that the victim seriously provoked the defendant requires the trial court to give a requested charge on voluntary manslaughter.  See Merritt v. State, 292 Ga. 327, 331 (737 SE2d 673) (2013).  This Court has held, however, that neither fear that someone is going to pull a gun nor fighting are the types of provocation which demand a voluntary manslaughter charge.  See Brown v. State, 294 Ga. 677, 680 (3) (755 SE2d 699)

12

(2014); Merritt v. State, supra, 292 Ga. at 331. Further, words alone are generally insufficient to excite the passion necessary to give rise to voluntary manslaughter. See Gresham v. State, 289 Ga. 103, 104 (3) (709 SE2d 780) (2011). In this case, there is no evidence that following his arrival appellant was taunted by the victim or subjected to any conduct that would excite the passions of a reasonable person. Rather, the evidence shows that the prior altercation and fighting involving appellant's relatives occurred some 30 or 40 minutes before the appellant arrived at the apartment complex. As the evidence in this case does not rise to a level sufficient to support a voluntary manslaughter charge, the trial court did not err in refusing to give the charge requested.

Judgment affirmed. All the Justices concur.

Decided March 16, 2015.

Murder. DeKalb Superior Court. Before Judge Scott.

Eric J. Taylor, for appellant.

Robert D. James, Jr., District Attorney, Deborah D. Wellborn, Roderick B. Wilkerson, Buffy D. Thomas, Assistant District Attorneys, Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney

General, Paula K. Smith, Senior Assistant Attorney General, Christian A. Fuller, Assistant Attorney General, for appellee.