308 Ga. 330
FINAL COPY

S20A0248.  THE STATE v. GOFF.

PETERSON, Justice.

Todd Goff was convicted of malice murder for killing his girlfriend, Tiffany Nicole Salter.[1] The trial court granted Goff a new trial on the basis that his trial counsel rendered ineffective assistance by: (1) advising Goff not to testify; (2) failing to move for a mistrial after the jury heard that Goff was on probation; and (3) failing to introduce Goff's booking photos. The State appeals. Because the trial court erred in finding that Goff's trial counsel performed deficiently in any of these respects, we reverse.

The evidence at trial was as follows. Goff and Salter lived

---

[1] Salter was killed on July 7, 2012. Indicted by a Richmond County grand jury for Salter's murder, Goff was tried before a jury on March 31 to April 2, 2014. The jury found Goff guilty of both malice murder and felony murder. The trial court sentenced Goff to life in prison without the possibility of parole for malice murder; the felony murder count was vacated by operation of law. Following a hearing on April 3, 2019, the trial court granted Goff's motion for a new trial in an order entered on May 31, 2019. The State filed a notice of appeal on June 14, 2019, and amended that notice on August 28, 2019. The case was docketed to this Court's term beginning in December 2019 and orally argued on January 14, 2020.

together in Richmond County and had a tumultuous relationship. On the morning of July 7, 2012, Goff's mother, Joanne Ciccio, called 911 and reported that Goff and his girlfriend had been choking each other and Goff thought that he might have killed her.

Upon responding to the emergency call, police found Salter's body in a wooded area behind the home that the couple shared, about 15 to 20 feet from what appeared to be the freshly dug beginnings of a grave. Salter had bruising on her neck and lacerations on her head, and her body appeared to have been dragged and had dirt on it. Near the body lay a long shovel and a jug of iced tea; DNA of both Goff and Salter was found on the mouth of the jug. The medical examiner who performed Salter's autopsy concluded that she died of asphyxiation by strangulation.

Ciccio, Goff's mother, testified for the State, although the trial court allowed the State to ask her leading questions over the defense's objection. She testified that "for five weeks prior" to Salter's death, she "had been noticing a lot of scratch marks on [Goff's] neck[.]" Ciccio testified that Goff told her the scratches were

"nothing" and she should not worry, but he also said that Salter had been acting strange. On the morning of Salter's death, Ciccio testified, Goff called her and asked her to get help for Salter because he did not think she was breathing.

After Ciccio testified that she could not remember certain aspects of her statement to police, the State played a recording of it. In her statement, Ciccio said that when Goff called her on the morning of July 7, Goff said that he and Salter had been fighting in the yard, Salter was choking him, and he choked her. Ciccio reported that Goff said, "I didn't mean to," and "I think she's dead." Ciccio also reported that Goff was threatening to kill himself, and she could hear him asking Salter to "wake up." But in her trial testimony, Ciccio denied that Goff told her that he had choked Salter, saying she had arrived at that conclusion on her own given Ciccio's poor mental state and her previous observations of scratches on Goff's neck.

In Ciccio's statement to police, she referenced taking Goff to see his probation officer the previous day. The State previously had

reassured defense counsel and the trial court that this reference to probation had been redacted. When the tape of Ciccio's statement was played for the jury with an unredacted reference to probation, defense counsel objected on the ground of impermissible character evidence. But defense counsel then declined the trial court's offer for a curative instruction or a mistrial, withdrawing his objection.

The State also called to the stand Goff's brother, Ray Lockamy, who came to assist Goff before police arrived. Lockamy testified that he and Goff attempted to resuscitate Salter and that Goff was distraught over Salter's condition and urged police to help Salter when they arrived. Lockamy also testified that Goff told him, "I don't know what happened. We were playing and I was just trying to scare her[.]"

Goff told police that he and Salter merely argued on the day she died, denying they had a physical altercation. He claimed that scratches on his body visible to the interrogating officer were several days old and not the result of a fight with Salter. He said she ran into the woods during their argument, and he found her on the

ground about 15 minutes later. Although no recording of this interview was played for the jury, an investigator testified to the jury about Goff's statements in general terms but did not mention Goff's explanation for the scratches. Goff elected not to testify at trial.

In addition to malice murder and felony murder, the jury was instructed on both voluntary and involuntary manslaughter. It returned verdicts of guilty on malice murder and felony murder. Sentenced to life without parole for malice murder, Goff moved for a new trial on various grounds, including trial counsel's ineffectiveness in advising him not to testify at trial.[2]

At the motion for new trial hearing, Goff testified that he had expected to testify at his trial. But when it came time to tell the trial court of his decision, Goff testified, his counsel requested a break and urged him not to testify, saying, "I got this." Goff testified at the hearing that, on the morning of Salter's death, he and Salter had

---

[2] The motion itself does not appear among the limited number of filings designated part of the record in the State's Amended Notice of Appeal.

engaged in a physical fight behind their home in which she grabbed his throat and testicles and called him a "stupid mother f*****," leading him to grab her by the throat. "[W]e're going back and forth," Goff testified, "and you know she's squeezing harder and I start to squeeze harder and to the point where I see . . . she's starting to go limp." Goff also testified at the hearing that the hole in his back yard was intended as a burial site for his dog that recently had died. Through Goff's testimony, his appellate counsel admitted Goff's booking photo from his arrest for Salter's death, showing an apparent scratch on his neck; the photo had not been offered at trial. Goff also testified that trial counsel knew that he had been prescribed psychiatric medications and that he "had made suicidal claims and had suicidal thoughts" prior to Salter's death and "had suicidal thoughts on the date of the incident."[3]

Trial counsel testified at the motion for new trial hearing that he advised Goff that, although Goff had a right to testify, he did not

---

[3] We note that, although the appellate record in this case is limited, Goff testified at the motion for new trial hearing that he was found competent to stand trial.

bear the burden of proof and would be subject to cross-examination, facing "a lot of questions . . . that [Goff] wouldn't have a good answer for." Counsel testified that, based on his own questioning of Goff, he "didn't think he'd do well." Explaining why he did not think Goff would do well on cross-examination, counsel also referenced Goff's interactions with police, including that "he was by all account with the deputies very hard to control once they got there[.]" Counsel testified that he thought he "had enough" evidence without Goff's testimony to support the lesser charges of voluntary and involuntary manslaughter.

The trial court rejected some of the grounds raised in Goff's motion, including the general grounds, but granted a new trial based on ineffective assistance of counsel. The trial court found that trial counsel was ineffective by: (1) advising Goff not to testify; (2) failing to move for a mistrial after the jury heard that Goff was on probation; and (3) failing to introduce Goff's booking photos. The trial court reasoned that no competent attorney would have failed to call Goff to testify, because Goff's testimony was indispensable to

prove the serious provocation needed to support a voluntary manslaughter verdict. The State appeals, arguing that the trial court erred as to all three findings of deficient performance.

We review de novo a trial court's grant of a new trial on a special ground involving a question of law. See *O'Neal v. State*, 285 Ga. 361, 362-363 (677 SE2d 90) (2009). But a trial court's factual findings in considering a claim of ineffectiveness of counsel will be affirmed unless clearly erroneous. See *Smith v. State*, 296 Ga. 731, 733 (2) (770 SE2d 610) (2015). To prevail on a claim of ineffective assistance of counsel, Goff must show both that his trial counsel's performance was deficient and that this deficiency prejudiced his defense. See *Strickland v. Washington*, 466 U.S. 668, 687 (104 SCt 2052, 80 LE2d 674) (1984). If an appellant fails to prove one of those prongs, "it is not incumbent upon this Court to examine the other prong." *Smith*, 296 Ga. at 733 (2) (citation and punctuation omitted).

1.    The State argues that the trial court erred in finding that trial counsel was ineffective in advising Goff not to testify. We agree.

"To establish deficient performance, an appellant must

overcome the strong presumption that his . . . counsel's conduct falls within the broad range of reasonable professional conduct and show that his counsel performed in an objectively unreasonable way" in the light of all of the circumstances. *Smith*, 296 Ga. at 733 (2) (citation and punctuation omitted).

> Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable. Accordingly, a tactical decision will not form the basis for an ineffective assistance of counsel claim unless it was so patently unreasonable that no competent attorney would have chosen it.

*Crouch v. State*, 305 Ga. 391, 400 (3) (825 SE2d 199) (2019) (citations and punctuation omitted). Such strategic choices include the decision to advise a defendant not to testify. See *Hamilton v. State*, 274 Ga. 582, 589 (13) (555 SE2d 701) (2001). Moreover, "the decision whether to testify in one's own defense is a tactical decision to be made by the defendant himself after consultation with trial counsel[.]" *Gibson v. State*, 290 Ga. 6, 9 (4) (717 SE2d 447) (2011) (citation and punctuation omitted); see also *State v. Nejad*, 286 Ga.

695, 696 (1) n.2 (690 SE2d 846) (2010).[4]

Here, the trial court apparently found counsel's assessment that he "had enough" evidence without Goff's testimony to be unreasonable. The trial court concluded that Goff's testimony was "indispensable" to proving provocation, necessary for a verdict of guilty on voluntary manslaughter, rather than murder. See OCGA § 16-5-2 (a). But as noted by the trial court in its order, trial counsel testified that he was concerned that Goff would not perform well on cross-examination. Goff has not shown that counsel's advice was so patently unreasonable that no competent attorney would have given Goff the same advice. As discussed further in Division 3, Goff's testimony likely would have provided a means — if not the only means — to introduce his booking photo showing a scratch on his neck. But Goff's testimony would have been somewhat cumulative of Ciccio's statements the morning of Salter's death. Even if Goff's

---

[4] We note that the trial transcript clearly shows that the trial court informed Goff that he had the right to testify, that the decision of whether to testify was not his lawyer's but his own, and that no one could prevent him from testifying if he chose to do so. Goff affirmed in his colloquy with the trial court that he understood all of those things.

proffered testimony might have been sufficient evidence of provocation to support a verdict of guilty on voluntary manslaughter — an issue we need not decide — a decision by Goff to testify would have carried the significant risks inherent in testimony by a defendant. In particular, he would have been subjected to cross-examination about his pre-trial statement, in which he said that his scratches were several days old and denied that he had engaged in a physical fight with Salter, contradicting a voluntary manslaughter theory of defense. And although the trial court found Goff's testimony at the motion for new trial hearing "compelling concerning his extreme and sometimes visible remorse," remorse is not a defense to a murder charge. Moreover, a competent defense lawyer may have viewed an emotional client — who also testified at the motion for new trial hearing that he had significant mental health issues of which counsel was aware — as unpredictable on the stand.[5] As Goff has not shown that his trial counsel's advice against

---

[5] Goff verged on hysteria throughout the recorded conversation with police on the day of Salter's death. And, as noted above, counsel referenced

testifying was constitutionally deficient, the trial court erred in granting Goff a new trial on this basis. See *Barnett v. State*, 300 Ga. 551, 556-557 (3) (796 SE2d 653) (2017) (defendant could not show counsel's advice not to testify was deficient performance where counsel's strategy was to show that defendant acted in self-defense without subjecting him to damaging cross-examination); *Hamilton*, 274 Ga. at 589 (13) (strategic decision to advise defendant not to testify was not unreasonable, where counsel explained that advice was primarily based on expectation of effective cross-examination by State).

2.   The State next argues that the trial court erred in concluding that trial counsel was ineffective for failing to move for a mistrial after the jury heard that Goff was on probation. We agree that the trial court erred.

The reference to Goff's probationary status was brief and non-specific; Ciccio did not say why Goff was on probation but merely

---

Goff's behavior in the presence of law enforcement as one of the reasons he did not think Goff should testify.

said she had taken him to see his probation officer on a particular date.[6] Trial counsel testified that he declined to press for a mistrial because he thought "we had a pretty good jury and a pretty good trial going[.]" Given the fleeting, nonspecific nature of her reference to Goff's probation status, we cannot say that trial counsel's assessment was objectively unreasonable. See *Brown v. State*, 307 Ga. 24, 33 (6) (a) (834 SE2d 40) (2019) (trial counsel's failure to object to investigator's "passing and non-responsive" reference to having identified the appellant using a "jail database" did not amount to deficient performance); *Babbage v. State*, 296 Ga. 364, 370 (5) (d) (768 SE2d 461) (2015) (counsel's failure to object or request mistrial over witness's brief and nonresponsive reference to appellant's previous incarceration did not constitute deficient performance).

3.     Finally, the State challenges the trial court's conclusion

---

[6] Ciccio mentioned earlier in the interview that both Goff and Salter had been to jail in recent weeks, but there was no suggestion in her statement that this was related to the probation officer visit, and the trial court did not rely on this reference in granting Goff a new trial. In the discussion with the trial court just before the start of Goff's trial, the State told the court that the reference to the arrests was admissible as a "prior difficulty" and did not need to be redacted, and defense counsel said he had no objection.

that counsel was ineffective in failing to introduce Goff's booking photos from his arrest in this case. Again, we agree with the State that the trial court erred.

The trial court found that the photos would have supported Goff's contention that Salter attacked him and his provocation defense, so trial counsel was constitutionally deficient for failing to introduce them. The State argues that the trial court overlooked an objectively reasonable reason for choosing not to introduce them, i.e., that doing so would have required Goff's testimony, inviting the State to impeach Goff with his prior claim that the marks on his body at the time of his arrest for Salter's death were several days old and not the result of any fight with Salter. Although Goff argues that the photos could have been authenticated by a law enforcement witness, he does not dispute the State's contention that his testimony was necessary to explain the significance of the photos such that their introduction would have supported his defense, nor has he proffered any other witness's testimony in support of his claim about them. Indeed, the trial court appears to have assumed

that Goff's testimony was necessary to explain the photos when it stated that "the booking photos . . . could have supported provocation (with appropriate testimony from Goff)." Given Goff's election not to testify — which Goff has not shown was the result of deficient performance by counsel — we cannot say that trial counsel rendered deficient performance by failing to introduce Goff's booking photos.

*Judgment reversed. Melton, C. J., Nahmias, P. J., and Blackwell, Boggs, Warren, Bethel, and Ellington, JJ., concur.*

DECIDED MARCH 13, 2020.
Murder. Richmond Superior Court. Before Judge Roper.
*Natalie S. Paine, District Attorney, Joshua B. Smith, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General*, for appellant.
*Sean Gamble, George K. Davis II, Katherine M. Mason*, for appellee.