**FIFTH DIVISION**
**MCFADDEN, C. J.,**
**RICKMAN, P. J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**April 27, 2021**

# In the Court of Appeals of Georgia

A21A0643. MILLER v. THE STATE.

PHIPPS, Senior Appellate Judge.

A Harris County jury found Tony Louis Miller, Jr., guilty of rape, kidnapping, five counts of child molestation, four counts of sexual battery against a child under 16 years of age, three counts of enticing a child for indecent purposes, three counts of false imprisonment, and three counts of simple battery. Miller appeals following the denial of his motion and amended motion for new trial. He asserts that the evidence was insufficient to support his convictions, his trial counsel was ineffective by failing to move for a mistrial following a spontaneous outburst by the victim's father during trial, and the trial court erred in allowing individuals to remain in the courtroom after the rule of sequestration had been invoked. For the following reasons, we affirm Miller's convictions.

1. We turn first to Miller's assertion that the evidence was insufficient to support his convictions.[1] In so doing, we recognize well settled principles regarding the sufficiency of the evidence standard:

> When a criminal conviction is appealed, the evidence must be viewed in the light most favorable to the verdict, and the appellant no longer enjoys a presumption of innocence. And, of course, in evaluating the sufficiency of the evidence, we do not weigh the evidence or determine witness credibility, but only determine whether a rational trier of fact could have found the defendant guilty of the charged offenses beyond a reasonable doubt. We will, then, uphold a jury's verdict so long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case.

*Garner v. State*, 346 Ga. App. 351, 353-354 (1) (816 SE2d 368) (2018) (citations and punctuation omitted).

So viewed, the record shows that at the 2019 trial, the victim testified that she was 15 years old, and she knew Miller because he lived at both "Granny's house"[2] and his father's house in her neighborhood. The victim identified Miller in court. One of Miller's friends testified at trial that Miller was 26 or 27 years old. The charges here involved five separate incidents against the same victim.

---

[1] "For convenience of discussion, we have taken the enumerated errors out of the order in which [Miller] has listed them. . . ." *Pugh v. State*, 347 Ga. App. 710, 711 (1), n. 5 (820 SE2d 766) (2018) (citation omitted).

[2] "Granny's house" was a house where all the neighborhood kids hung out.

2

Counts 1-5 (simple battery, enticing a child for indecent purposes, sexual battery against a child under the age of 16, child molestation, and false imprisonment) occurred at a lake where the victim swam. The victim testified that in the summer of 2017, when she was between seventh and eighth grade, she went to the lake with some friends. While she was in the lake, Miller swam behind her, grabbed her butt, pushed her bathing suit bottom section to the side, and placed his penis on her vagina. The victim tried to get away from Miller, but he would not let her leave. When people started looking over at them, Miller stopped, and the victim was able to swim away.

Counts 6-9 (false imprisonment, sexual battery against a child under the age of 16, child molestation, and simple battery) occurred in August 2017 at "Granny's house" in the bathroom. According to the victim, the kids were playing hide and seek, and she went to hide in the bathroom. Miller followed her to the bathroom, told her to turn around, and pushed her over a pile of clothes. He then pulled down her shorts and her underwear, and he put his penis on her vagina. The victim was crying and kept trying to turn around, but Miller kept pushing her down. Miller stopped when the individual who was the "seeker" came into the bathroom.

Counts 10-15 (enticing a child for indecent purposes, simple battery, sexual battery against a child under the age of 16, two counts of child molestation, and rape)

3

occurred at "Granny's house" in the living room and kitchen. The victim testified that when she was in the eighth grade she spent the night on the living room floor at Granny's house. When she got up to go to the bathroom, Miller followed her from the bathroom. Miller put her on a table in the kitchen, got between her legs, and began kissing her. Miller then pulled the victim's shorts and underwear to the side, and he put his penis on her vagina. The victim told Miller "no" and tried to get off the table, but Miller would not let her off. Eventually, he let her off the table and the victim went back to the living room.

Miller, however, followed the victim to the living room and told the victim that when she was 18 he was "going to have [her,]" that someone would get hurt if she told anyone, and that he always got what he wanted. Miller then left, but he later came back, got on top of the victim, pulled her shorts and underwear to the side, and put his penis in her vagina. When he was finished, Miller pulled his shorts back up and the victim noticed that white "sperm was coming through his shorts[.]" Miller then left to go change at his father's house. The victim went to the bathroom and cleaned herself off because she didn't want Miller's sperm to make her pregnant. Then she cried herself to sleep.

A few days later, the victim told Miller that she was worried about getting pregnant and she was going to tell her father what Miller had done, but Miller convinced her to pee in a cup and let him take it to be tested. Miller then sent the victim a picture of a negative pregnancy test. The victim told one of her friends who lived at Granny's house that Miller was touching her, but asked her not to tell anyone else.

Count 16 (false imprisonment) occurred at Miller's father's house. The victim testified that she went with Miller to his father's house to get a cat feeder. Miller told her his father was home, so the victim did not think anything would happen. However, when they arrived at the house, Miller's father was not home. At some point, Miller asked the victim for a hug and then asked her what color underwear she was wearing. The victim told Miller she wanted to leave and tried to leave the house, but Miller turned her around and pulled down her leggings so he could see the color of her underwear. The two then left the house.

Counts 17-20 (kidnapping, enticing a child for indecent purposes, sexual battery against a child under the age of 16, and child molestation) occurred in the woods. The victim testified that while a group of kids was gathering firewood, Miller told them he was taking the victim back to the house, but instead he pulled her into

5

the woods and told her to get on the ground. The victim was scared that Miller would hurt her, so she got on the ground. She was on her back, and Miller got on top of her, pulled her shorts and underwear to the side, and placed his penis on her vagina. Miller also put his hand under the victim's shirt and grabbed her boob. Miller stopped when he heard the other kids coming toward them. He ran a different direction, caught up with the other kids, and then, when they reached the victim, he asked her what she was doing in the woods. This happened when the victim was in the eighth grade.

A number of witnesses testified that they did not observe anything suspicious between Miller and the victim. In fact, one witness testified that he never saw Miller and the victim alone when swimming. However, one of the victim's friends testified that the victim told her that "whenever she would be laying down, that [Miller] would touch on her, and she would tell him to stop but he wouldn't." Another friend testified that the victim told her that Miller "did stuff to [her]." Specifically, the victim told her that Miller raped her on more than one occasion. In addition, the father of one of the victim's friends testified that he heard rumors of something going on between the victim and Miller, and he asked the victim if someone did "something creepy" to her. The victim responded, "yes, sir." At that point, the friend's father contacted the victim's father and the sheriff's department. The victim's father testified that the

victim told him that Miller had "touched her and – . . . done a lot more things to her[.]"

The sheriff's corporal who responded to "a possible sexual battery or a child molestation" call testified that he only asked the victim two questions: whether an incident took place between her and Miller and whether it was sexual in nature. When the victim responded yes to both questions, he stopped questioning the victim because he did not want to taint her interview with individuals who specialized in child victim interviews.

The victim was taken to a child advocacy center and interviewed by an expert in child forensic interviewing. The expert testified that she had conducted 428 forensic interviews of children. According to the expert, delayed disclosure by a sexually abused victim is not unusual, nor is it unusual for a child to return to a location where an alleged perpetrator is located. The victim's recorded interview was played for the jury.

At the conclusion of the trial, the jury found Miller guilty of all counts, and this appeal followed.

Miller asserts that the evidence was insufficient to find him guilty of the charged offenses because it was "largely circumstantial." According to Miller, "while

there was direct testimony from the alleged victim, it was, at best, contradictory." Miller also argues that not a single witness observed anything inappropriate between Miller and the victim. Essentially, he challenges the victim's credibility as a witness and the lack of evidence to corroborate her testimony. We find that the evidence was sufficient to support Miller's convictions.

First and foremost, it is well settled that "[t]he testimony of a single witness is generally sufficient to establish a fact." OCGA § 24-14-8. Here, the victim testified in detail about all of the occurrences alleged in the indictment. Her testimony, alone, was sufficient to support Miller's convictions. See *Stodghill v. State*, 351 Ga. App. 744, 745 (1) (832 SE2d 891) (2019) (victims' testimony alone was sufficient to support convictions for offenses including enticing a child for indecent purposes); *Reinhard v. State*, 331 Ga. App. 235, 238 (1) (c) (770 SE2d 314) (2015) (victims' testimony alone was sufficient to support convictions for rape, aggravated sexual battery, child molestation, and enticing a child for indecent purposes); *Knight v. State*, 311 Ga. App. 367, 368 (1) (715 SE2d 771) (2011) (victim's testimony alone was sufficient to establish the elements of child molestation); *Clark v. State*, 282 Ga. App. 248, 250-251 (1) (b, c) (638 SE2d 397) (2006) (victim's testimony was sufficient to

support convictions for kidnapping, child molestation, and enticing a child for indecent purposes).

Moreover, contrary to Miller's assertions and although not required, the victim's testimony was corroborated in this case. Although none of the witnesses testified that they observed any inappropriate conduct between the victim and Miller, a number of the witnesses corroborated the victim's testimony as to the time and location of the incidents. In addition, two of the victim's friends testified at trial about the victim's disclosures to them, and one of them testified that the victim told her Miller had raped the victim. These prior outcry statements corroborated the victim's testimony. See *Daniel v. State*, 296 Ga. App. 513, 519 (4) (675 SE2d 472) (2009) ("[C]orroboration is not required but if the jurors had concerns they could look to the victim's outcry statements for corroboration."); *Sewell v. State*, 244 Ga. App. 449, 451-452 (1) (c) (536 SE2d 173) (2000) (victim's testimony was corroborated by her outcry to her mother and another witness). Additionally, the jury viewed a videotaped forensic interview of the victim, in which she reiterated her allegations of sexual abuse, also corroborating the victim's testimony. See *Bufford v. State*, 320 Ga. App. 123, 123 (1) (739 SE2d 421) (2013) (forensic interviews corroborated children's trial

9

testimony); *Pendleton v. State*, 317 Ga. App. 396, 399-400 (2) (731 SE2d 75) (2012) (victim's testimony was corroborated by forensic interview).

While Miller summarily argues in his appellate brief that the victim's testimony was "contradictory" and "at odds with her prior statements in a number of important respects[,]" he does not identify any specifics to support his argument. "[I]t is not the function of this Court to cull the record on behalf of a party in search of instances of error." *Serdula v. State*, 356 Ga. App. 94, 110 (3) (a) (845 SE2d 362) (2020) (citation and punctuation omitted). In any event, to the extent that there were any contradictions or inconsistencies between the victim's testimony and her prior statements, this Court repeatedly has stated that assessing witness credibility, resolving conflicts and inconsistencies in the testimony, weighing the evidence, and drawing reasonable inferences from the evidence are the province of the factfinder, not this Court. See *Garner*, 346 Ga. App. at 355 (1); *Knight v. State*, 311 Ga. App. at 368 (1). "In so doing, a jury is authorized to believe or disbelieve all or any part of the testimony of witnesses." *Knight*, 311 Ga. App. at 368 (1) (citations and punctuation omitted). And, any alleged lack of corroboration "goes to the weight of the evidence and the credibility of the testifying witness, which is solely within the

purview of the jury." *Reinhard v. State*, 331 Ga. App. at 238 (1) (c) (citation and punctuation omitted).

In this case, the jury clearly resolved any conflicts or discrepancies in the victim's testimony against Miller, which it was permitted to do. *Stodghill v. State*, 351 Ga. App. at 745 (1). The evidence was sufficient for a rational trier of fact to find Miller guilty of the crimes charged beyond a reasonable doubt under *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979). See OCGA § 16-6-1 (a) (rape); OCGA § 16-5-40 (a) (kidnapping); OCGA § 16-6-4 (a) (child molestation); OCGA § 16-6-22.1 (b, d) (sexual battery against a child under 16 years of age); OCGA § 16-6-5 (a) (enticing a child for indecent purposes); OCGA § 16-5-41 (a) (false imprisonment); and OCGA § 16-5-23 (a) (simple battery).

2. Miller asserts his trial counsel rendered ineffective assistance of counsel by failing to move for a mistrial after the victim's father made a spontaneous outburst while the victim was testifying. The trial court concluded that trial counsel's performance was not unreasonable or deficient. We agree with the trial court.

> [I]n order to establish ineffectiveness of trial counsel, appellant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defense. There is a strong presumption that the performance of trial counsel falls within the wide range of reasonable professional assistance. The reasonableness of the

11

conduct is viewed at the time of trial and under the circumstances of the case. In reviewing a lower court's determination of a claim of ineffective assistance of counsel, we give deference to the trial court's factual findings, which are upheld on appeal unless clearly erroneous; however, we review the lower court's legal conclusions de novo.

*Thompson v. State*, 327 Ga. App. 893, 896 (2) (761 SE2d 413) (2014) (citation omitted). "In order to succeed on this ineffectiveness claim, [Miller] must show that if his counsel had moved for a mistrial, it would have been an abuse of discretion for the trial court to deny it." *Paige v. State*, 277 Ga. App. 687, 691 (4) (a) (627 SE2d 370) (2006).

Here, after the victim described the events that occurred at the lake, including Miller grabbing the victim, placing his penis on her vagina, and not letting her leave, the victim's father spontaneously shouted, "I'm going to get this mother f***er. I can't do it, please." The trial judge immediately asked that the jury be removed from the courtroom for a moment, but before the jury left, the victim's father stated again, "I'm going to get you. I'm going to get you. I'm going to get you, mother f***er." The trial court had the father removed from the courtroom for the remainder of the trial, and, when the jury was brought back in, the trial judge apologized for the delay and instructed the jury:

12

I would ask – this is a difficult trial – that you put that aside, what has just happened, and remember your oath as jurors to simply make your decision based on the testimony that comes from the witness stand and the testimony that -- or the exhibits that are admitted during the trial.

The trial then continued. Defense counsel made no objection or motion regarding the trial court's instruction to the jury when they were brought back into the courtroom or the continuation of the trial.

At the conclusion of the trial, the court reiterated in its final instructions to the jury the jurors' obligation to base their decision on the evidence and not sympathy to any party:

Your verdict should be a true verdict based upon your opinion of the evidence according to the laws given you in this charge. You are not to show favor or sympathy to one party or the other. It is your duty to consider the facts objectively without favor, affection, or sympathy to either party.

It is well settled that "[m]any, if not most, trials by jury involve some degree of emotion by at least one party or the other. It would be unreasonable to expect that all emotions be completely frozen during a trial by jury when such effective bridle on emotions cannot be sustained elsewhere." *Thompson v. State*, 327 Ga. App. at 899 (2) (b) (citation and punctuation omitted). Such "[d]emonstrations and outbursts which

13

occur during the course of a trial are matters within the trial court's discretion unless a new trial is necessary to ensure a fair trial." Id. at 898 (2) (b) (citation and punctuation omitted). "Where the trial court fails to act to stop the disturbance, or fails to instruct the jury to disregard it, and the demonstration could prevent the defendant from receiving a fair trial, this court must grant a new trial." *Sheppard v. State*, 235 Ga. 89, 91 (2) (218 SE2d 830) (1975).

Here, the trial judge immediately removed the victim's father from the courtroom and took prompt, thorough, and curative action to handle the outburst, reminding the jury to evaluate the case based only upon the evidence and testimony. "Contrary to appellant's argument, this curative instruction was sufficient to alleviate the potential for prejudice and to ensure a fair trial." *Christian v. State*, 277 Ga. 775, 777 (2) (596 SE2d 6) (2004). See also *Butler v. State*, 284 Ga. 620, 623 (3) (669 SE2d 118) (2008) (outburst did not deny the defendant a fair and impartial trial in light of trial court's prompt, thorough, and curative action); *Sheppard*, 235 Ga. at 91 (2) (no error when trial court overruled defense counsel's motion for mistrial and instead instructed jury to disregard outburst by victim's mother).

The cases cited by Miller do not require a different result because in those cases the trial court failed to take steps to mitigate the impact on the jury of any

14

outburst. See *Glenn v. State*, 205 Ga. 32, 34-35 (52 SE2d 319) (1949) (trial court did not take prompt action to give curative instruction when widow audibly and visibly wept in front of jury); *Patton v. State*, 117 Ga. 230, 238-239 (43 SE 533) (1903) (trial court did not take prompt action to give curative instruction or otherwise lessen impact when the jury was influenced by a mother who was in tears and sobbing with grief). We note that in both of those cases, the Supreme Court of Georgia indicated that prompt action by the trial court, such as removing the sympathetic individual from the courtroom, generally will obviate the necessity of declaring a mistrial. *Glenn*, 205 Ga. at 35; *Patton*, 117 Ga. at 238-239.

Based on the record before us, we cannot say that the trial court would have abused its discretion by denying a requested motion for mistrial. Because Miller "has failed to show that he would have been entitled to a mistrial under the circumstances presented, . . . trial counsel's failure to pursue a meritless motion does not constitute ineffective assistance of counsel." *Gipson v. State*, 332 Ga. App. 309, 323 (8) (f) (772 SE2d 402) (2015) (citation and punctuation omitted).

Moreover, when questioned at the motion for new trial hearing, Miller's trial counsel testified that he did not move for a mistrial following the victim's father's outburst because (1) he felt it was unnecessary given that the trial court took

15

immediate, curative action, and (2) he strategically chose not to move for a mistrial in front of the jury because he felt it would be more prejudicial to Miller after the steps taken by the trial court. "[A] tactical decision will not form the basis for an ineffective assistance of counsel claim unless it was so patently unreasonable that no competent attorney would have chosen it[,]" *State v. Goff*, 308 Ga. 330, 334 (1) (840 SE2d 359) (2020), and, here, "we cannot say that trial counsel's assessment was objectively unreasonable." Id. at 335 (2).

Miller has not met his burden to establish ineffective assistance of counsel on this ground. See *Thompson*, 327 Ga. App. at 899 (2) (b).

3. Following opening statements and after the first witness was called to the stand, Miller invoked the rule of sequestration. The State requested that the victim, the victim's father, and the lead investigator from the sheriff's office be allowed to remain in the courtroom. Miller did not object to the victim and her father remaining in the courtroom; however, he did object to the lead investigator remaining in the courtroom. After hearing argument from both sides, the trial court permitted all three individuals to remain in the courtroom.

16

On appeal, Miller contends that the trial court erred by allowing the victim's father and the lead investigator to remain in the courtroom after the rule of sequestration had been invoked. We find no error.

Known as the rule of sequestration, OCGA § 24-6-615 provides that, at the request of any party to a trial, "the court shall order witnesses excluded so that each witness cannot hear the testimony of other witnesses[.]" "[T]he purpose of the sequestration rule is to prevent the shaping of testimony by one witness to match that of another, and to discourage fabrication and collusion." *Davis v. State*, 299 Ga. 180, 185 (2) (a) (2) (787 SE2d 221) (2016) (citation and punctuation omitted). "[I]ts violation generally does not affect the admissibility of the testimony, but may impact the offending witness' credibility." *Rakestrau v. State*, 278 Ga. 872, 876 (4) (608 SE2d 216) (2005).

There are, however, exceptions to the sequestration rule. As relevant here, OCGA § 24-6-615 (3) precludes trial courts from excluding a witness "whose presence is shown by a party to be essential to the presentation of the party's cause." In addition, OCGA § 24-6-616 precludes the trial court from excluding the victim of a criminal offense. And, a "victim" is defined to include "[a] parent, guardian, or custodian of a crime victim who is a minor or a legally incapacitated person except

17

if such parent, guardian, or custodian is in custody for an offense or is the defendant." OCGA § 17-17-3 (11) (C). The trial court has broad discretion in deciding whether a witness comes within an exception. *Davis*, 299 Ga. at 186 (2) (a) (2).

(a) *The father*. We first turn to Miller's argument that allowing the father to remain in the courtroom violated the rule of sequestration. We find no merit to this argument.

As stated above, OCGA § 24-6-616 carves out an exception to the general rule of sequestration, specifically providing that "the victim of a criminal offense shall be entitled to be present in any court exercising jurisdiction over such offense[,]" and OCGA § 17-17-3 (11) (C) specifically defines "victim" to include "[a] parent, guardian, or custodian of a crime victim who is a minor[.]" OCGA § 24-6-616's exception to the rule of sequestration, however, is subject to OCGA § 17-17-9, which provides in pertinent part:

> A victim or member of the immediate family of a victim shall not be excluded from . . . trial . . . based solely on the fact that such person is subpoenaed to testify unless [(1)] it is established that such victim or family member is a material and necessary witness . . . and [(2)] the court finds that there is a substantial probability that such person's presence would impair the conduct of a fair trial. . . . A motion to exclude a victim or family members from the courtroom for any reason other than misconduct shall be made and determined prior to jeopardy attaching.

18

Pretermitting whether Miller is precluded from raising this argument because jeopardy had already attached when he invoked the rule[3] or because he waived the argument by failing to raise it below, it is clear that the victim's father in this case is considered both a "victim" of a criminal offense and a "member of the immediate family of the victim" for purposes of the statutory exemption excluding these individuals from the rule of sequestration. See *Nicely v. State*, 291 Ga. 788, 791 (2) (733 SE2d 715) (2012) (discussing the exclusion of the victim's mother from sequestration). "Since its enactment, Georgia courts have applied OCGA § 17-17-9 to allow the trial court to except both testifying victims and members of the victim's immediate family from the rule of sequestration." *Thompson v. State*, 308 Ga. 854, 861 (3) (843 SE2d 794) (2020).

Miller does not contest that the father of the victim fell within the statutory exemption for the rule of sequestration; he simply argues that if the father had been excluded from the courtroom, Miller would not have been prejudiced by the father's outburst, as discussed in Division 2, during the victim's testimony. However, Miller did not argue at trial that the father should be sequestered because his presence would

---

[3] Jeopardy attaches in a jury trial when a "jury is impaneled and sworn." *Alexander v. State*, 279 Ga. 683, 685 (2) (b) (620 SE2d 792) (2005).

19

impair the conduct of a fair trial. In fact, neither the parties nor the trial court could have expected the father's outburst. We find no abuse of discretion in the trial court's decision to allow the father to remain in the courtroom after the rule of sequestration had been invoked.

(b) *The investigator*. Miller asserts that the trial court erred by not applying the rule of sequestration to the lead investigator. We disagree because

> [s]ettled law authorizes such an exception to sequestration. The trial court may allow an investigative officer to remain in the courtroom to assist the prosecutor in the orderly presentation of evidence. A trial court is vested with the discretion to make an exception to the sequestration rule for the chief investigating officer and the discretion will not be reversed on appeal unless abused.

*Hudson v. State*, 325 Ga. App. 657, 660 (3) (754 SE2d 626) (2014) (citation omitted).

Here, the record shows that the State requested that the lead investigator remain in the courtroom to assist "with regard to matters that might come up during the course of the trial with regard to things that occurred during the investigation[.]" After listening to argument, the trial court exercised its discretion to permit the lead investigator to remain in the courtroom.

On appeal, Miller generally argues that two assistant district attorneys and at least one investigator from the district attorney's office were present at the trial to

20

assist with the presentation of evidence, and it "seems excessive to ask for an additional investigator to remain in the courtroom to assist with the presentation of the witnesses or evidence." However, Miller acknowledges that the Georgia Supreme Court has held that "[i]t is within a trial court's discretion to exempt the government's chief investigative agent from sequestration, and it is well settled that such an exemption is proper[.]" *Anderson v. State*, 307 Ga. 79, 88 (5) (834 SE2d 830) (2019); accord *Upshaw v. State*, 300 Ga. 442, 445 (4) (796 SE2d 287) (2017). Moreover, the lead investigator "was never called to testify, and contributed neither evidence nor testimony to the jury[,]" so the purpose behind the rule – to insulate witnesses from the testimony of others – was not violated or called into question. The trial court did not abuse its discretion by allowing the lead investigator to remain in the courtroom after the rule of sequestration had been invoked.

*Judgment affirmed. McFadden, C. J., and Rickman, P. J., concur.*