300 Ga. 551
FINAL COPY

S16A1892. BARNETT v. THE STATE.

BOGGS, Justice.

Appellant Steven Barnett was convicted of malice murder in the stabbing death of George "Bubba" Bennett.[1] The trial court denied Barnett's amended motion for new trial, and he now appeals, contending that he received ineffective assistance of counsel and that the trial judge should have recused herself. For the following reasons, we affirm.

Viewed in the light most favorable to the verdict, the evidence at trial established as follows: On the night of the incident, the victim, Bennett, had been on a date with Barnett's former girlfriend. Later that night, while the victim

---

[1]The crimes occurred on September 6, 2002. On November 20, 2002, a Glynn County grand jury indicted appellant on charges of malice murder and voluntary manslaughter. Following a February 2004 jury trial, appellant was acquitted of voluntary manslaughter but found guilty of malice murder. He was sentenced to life in prison. Appellant's motion for new trial was filed on March 11, 2004, amended by new counsel on July 18, 2008 and June 22, 2012 and denied on November 16, 2012. His notice of appeal was filed on December 14, 2012. The case was docketed in this Court for the September 2016 term and orally argued on November 7, 2016.

and the former girlfriend were sleeping, Barnett arrived at the victim's home and pounded on the door and the side of the house. The victim got up and the former girlfriend heard him unlock and open the door, and then heard Barnett's voice. She heard Barnett accuse the victim of "f***ing his old lady" and threaten to kill him. The victim responded, "She's not your old lady" and told Barnett to "Stop. Steve. Stop." The former girlfriend then heard the two men fighting. She remained in the bedroom and called police.

Moments later, Barnett drove away and crossed the center line at a high rate of speed as officers responding to the scene approached. Officers gave chase, and Barnett parked his car in a driveway and turned out his headlights. When officers arrested Barnett, he was covered in blood but had no visible injuries. The medical examiner determined that Barnett's shirt was stained with the victim's blood.

Officers and emergency personnel arrived at the victim's home to find him lying on the floor in a large amount of blood with a large stab wound to his chest, and Barnett's former girlfriend hiding in the bedroom. A knife from the victim's kitchen was found in the front yard of the home with blood on the blade. The victim died from a stab wound to the chest that entered his aorta and

resulted in a massive hemorrhage. The autopsy revealed other abrasions and contusions consistent with a fist fight.

There were no eyewitnesses to the fight between Barnett and the victim, but a neighbor identified Barnett on the scene and at trial as the man he saw "flying down the road" to the victim's home, walk up to the door, and pound on the door about 30 times. The neighbor then heard the victim yell, "I don't know you. Get out of my house," and observed Barnett leave after hearing "a commotion."

The former girlfriend testified that a year before this incident, Barnett hit and kicked her as he accused her of having a romantic relationship with another man. The officer who arrested Barnett in this incident testified that the former girlfriend suffered from injuries to her head and face. The former girlfriend explained that Barnett had told her on another occasion that if "he ever caught me with anybody that he would kill them, him and me." The State introduced evidence that a few days before the victim was killed, Barnett had asked his former girlfriend's sister if she was dating the victim, and had threatened another man he accused of having a romantic relationship with the former girlfriend.

3

1. Barnett does not challenge the sufficiency of the evidence. Nevertheless, we have independently reviewed the record and conclude that the evidence, as outlined above, was legally sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Barnett was guilty of malice murder under the standard of Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Barnett asserts that the trial judge should have recused herself prior to trial after disclosing that she had represented the victim in an unrelated matter. At the start of trial, the following colloquy took place:

> [Trial] Court: . . . And I did also want to put on the record — remember what I told y'all back in the back, that I thought — I got to thinking about it — way back in the dark ages when I was practicing law, that I represented [the victim] against the D.N.R. when they took his shrimp and his boat one time, and I need to put that on the record.
> [DEFENSE COUNSEL]: Judge, if I could explain that to my client.
> [TRIAL] COURT: Sure.
> [DEFENSE COUNSEL]: Judge Williams was in private practice before she took the bench and in her practice she represented [the victim]. Judge Williams is making certain evidentiary rulings in this case and certain decisions that affect the outcome. But she is revealing this conflict to you — not a conflict, this situation to you where you can decide whether or not you believe that to be a conflict. It doesn't mean that it is, but that's an issue that you can raise. I'll go ahead and tell you I don't find it to be a conflict.
> [BARNETT]: I don't either.

4

[DEFENSE COUNSEL]: We waive anything with that, Your Honor. We're comfortable proceeding.

Barnett asserts that the information disclosed was insufficient for him and his counsel to make a voluntary, knowing and informed waiver. The record reflects, however, that Barnett made no further inquiry into the trial judge's representation of the victim,[2] and made no motion to recuse the trial judge. "Generally speaking, when a party learns of grounds for the potential disqualification of the judge, he must promptly move for the recusal of the judge, and if he does not, the question of disqualification is not preserved for appellate review." (Citations and punctuation omitted.) Pyatt v. State, 298 Ga. 742, 749 (5) (784 SE2d 759) (2016). "Even after [Barnett] learned of the grounds for the potential disqualification of the trial judge, he apparently decided to take his chances with the same judge . . . . That was his choice to make, but he could not do so and still preserve the disqualification issue for review in the appellate courts." (Citations and footnote omitted.) State v.

_____

[2] While the trial judge mentioned that she had informed the parties "back in the back," neither the State nor Barnett discuss what the trial judge disclosed in chambers prior to the court's disclosure on the record.

5

Hargis, 294 Ga. 818, 822 (1) (756 SE2d 529) (2014).

> To hold otherwise would be to sanction gamesmanship . . . . The idea that a party could allow a judge whom the party believes to be disqualified to continue to preside over the case without objection, only later to urge the disqualification, is inconsistent with the principles of fair play and judicial economy that are embodied in the requirement that a motion to recuse be filed promptly.

(Citations and punctuation omitted.) Battle v. State, 298 Ga. 661, 666 (2) (a) (784 SE2d 381) (2016).

Even assuming the trial judge's failure to recuse could in a rare instance constitute reversible error even though the parties knew of the grounds for recusal but did not make a motion, there is no reversible error here. See Battle, supra, 298 Ga. at 666-667 (2) (b). "When considering the issue of recusal, both OCGA § 15-1-8 and Canon 3 of the Code of Judicial Conduct should be applied. The Code of Judicial Conduct provides a broader rule of disqualification than does OCGA § 15-1-8. (Citations omitted.)" Jones County v. A Mining Group, LLC, 285 Ga. 465, 465-466 (678 SE2d 474) (2009). None of the provisions of OCGA § 15-1-8 apply to the facts of this case.

Barnett asserts that the judge's failure to recuse herself constituted a "violation of judicial ethics" and a violation of his due process rights. Canon 3

6

(E) (1) (a) of the former Code of Judicial Conduct, applicable at the time of Barnett's trial, provided in part: "Judges shall disqualify themselves in any proceeding in which their impartiality might reasonably be questioned, including but not limited to instances where: . . . the judge has a personal bias or prejudice concerning a party. . . ." "The alleged bias of the judge must be of such a nature and intensity to prevent the defendant from obtaining a trial uninfluenced by the court's prejudgment." (Citations and punctuation omitted.) Turner v. State, 280 Ga. 174, 175 (626 SE2d 86) (2006). And

> [t]o be disqualifying, the alleged bias must stem from an extra-judicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case. Any analysis of the necessity for recusal is necessarily fact-bound, requiring an examination of the nature and extent of any business, personal, social or political associations, and an exercise of judgment concerning just how close and how extensive (and how recent) these associations are or have been.

(Citations and punctuation omitted.) Id.

> With regard to Barnett's bare assertion that he was denied due process,
>
> the constitutional guarantee of due process is not concerned with mere appearances of partiality. To the contrary, due process is concerned with *actual* bias, see Caperton [v. A. T. Massey Coal Co.], 556 U. S. [868,] 883 (III) [129 SCt 2252, 173 LE2d 1208) (2009)], and absent a showing of actual bias, due process requires recusal only in particular circumstances in which "the probability

7

of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable." Id. at 872.

(Emphasis in original.) Pyatt, supra, 298 Ga. at 751 (5). See also Williams v. Pennsylvania, 579 U. S. ___ (II) (A) (136 SCt 1899, 195 LE2d 132) (2016) (in assessing probability of bias for due process purposes, court should ask "whether, as an objective matter, the average judge in his position is 'likely' to be neutral, or whether there is an unconstitutional 'potential for bias.'" (Citation and punctuation omitted.)).

Although we have found no cases in Georgia involving a trial judge's former representation of a victim, federal courts have held that under 28 USC § 455 (a) (requiring a judge to "disqualify himself in any proceeding in which his impartiality might reasonably be questioned"), "a judge's prior representation of a witness or a party in an unrelated matter does not automatically require disqualification." (Citations omitted.) David v. City and County of Denver, 101 F3d 1344, 1351 (II) (A) (10th Cir. 1996); see also United States v. DeTemple, 162 F3d 279, 286-288 (II) (B) (4th Cir. 1998) (no showing that judge was obligated to recuse himself pursuant to 28 USC § 455 (a) where in bankruptcy fraud action, judge represented victim two years before defendant

filed personal bankruptcy and five years prior to his indictment); <u>United States v. Story</u>, 716 F2d 1088, 1091 (6th Cir. 1983) ("Prior contact with the victim of a crime is not sufficient to show judicial bias"; trial judge disclosed that 13 years earlier, victim (a charity) was one of many groups on judge's list of charitable organizations for donations while in private practice, and he represented victim in will contest); <u>Chitimacha Tribe of Louisiana v. Harry L. Laws Co.</u>, 690 F2d 1157, 1166 (5th Cir. 1982) (recusal not required where trial judge represented a defendant in unrelated matter six years earlier).

In his claim that the trial judge was biased against him, Barnett points to the judge's pre-trial order that there would be no continuances, her comments about domestic violence outside of the presence of the jury as she ruled to allow evidence of Barnett's acts of violence against others, and her ruling limiting his examination of trial counsel at the hearing on the motion for new trial held well after the trial of this case. However, "[j]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion. [Cit.]" <u>Liteky v. United States</u>, 510 U. S. 540, 555 (II) (114 SCt 1147, 127 LE2d 474) (1994). And although some of the trial judge's comments concerning domestic violence took into account considerations not shown by the evidence of record, Barnett has not

9

shown that these comments were motivated by bias resulting from her prior representation of the victim in the earlier unrelated matter.[3] Barnett has failed to show a violation of the former Code of Judicial Conduct and has shown no actual bias or constitutionally intolerable likelihood of bias to support his claim that he was denied due process.

3. Barnett argues that he received ineffective assistance of counsel. In order to prevail on a claim of ineffective assistance of counsel under Strickland v. Washington, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984), a criminal defendant must demonstrate that his counsel's performance was deficient and that, but for such deficiency, there is a reasonable probability that the outcome of the proceeding would have been different. Kennebrew v. State, 299 Ga. 864, 868 (2) (792 SE2d 695) (2016). And "[o]n appeal, we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts." (Citations and punctuation

---

[3] Barnett also asks this Court to take judicial notice that seven years after his trial, the Judicial Qualifications Commission investigated the trial judge for "recusal, disclosure and conflict issues" in criminal cases unrelated to his case. Even if this Court took judicial notice of this fact as Barnett urges, he has not shown how this fact establishes that the trial judge was biased in his case seven years earlier.

omitted.) <u>Handley v. State</u>, 289 Ga. 786, 787 (2) (716 SE2d 176) (2011).

Barnett asserts that his trial counsel was ineffective in failing to put him on the stand in support of his claim of self-defense. He argues that counsel's failure in this regard was due to his "severe mental impairments." Barnett points to counsel's "personal problems" during the time of his trial, counsel's unkempt appearance when he visited him prior to trial, and counsel's reprimand by the State Bar three years later unrelated to Barnett's case.

At the hearing on the motion for new trial, Barnett asserted that he wanted to testify at trial, but that counsel advised against him taking the stand. Counsel testified that he advised Barnett not to testify based upon Barnett's version of events and the State's evidence. Counsel testified that Barnett's "temper . . . got the best of him sometimes and we were concerned that that would come out at trial and we were concerned that the assistant district attorney would — would make short work of him on the stand." Counsel stated further that he nevertheless explained to Barnett the decision to testify was his alone, and the record reflects that the trial court advised Barnett that the decision to testify was a matter solely for him to make after consultation with counsel.

Trial counsel testified that his theory of defense was that Barnett was

11

acting in self-defense. He believed that there was a reasonable doubt as to Barnett's guilt because there were no eyewitnesses to the fight and no fingerprints on the knife. The transcript shows that counsel, during cross-examination of the crime lab technician, demonstrated that the victim's stab wound was consistent with a struggle, that he attempted to establish that the victim was the aggressor because the evidence showed that he had cocaine and hydrocodone in his system that night, and that he pointed out the lack of defensive wounds on the victim's body.

Barnett cannot meet his burden of showing that counsel's performance was deficient where counsel's strategy was to show that Barnett acted in self-defense without subjecting him to damaging cross-examination. See Johnson v. State, 290 Ga. 382, 384-385 (2) (a) (721 SE2d 851) (2012) (even though defense was self-defense/justification, counsel did not perform deficiently in advising defendant to not testify for fear of evidence that could have presented him "badly to the jury").[4]

_____

[4] We are not persuaded by the Florida case cited by Barnett in his letter brief to this Court. In that case, counsel's strategy was determined to be unreasonable where no evidence or inferences from the admitted evidence supported the defense theory, and counsel testified that he did not want the

Judgment affirmed.   All the Justices concur, except Peterson, J., not participating.

Decided February 6, 2017.

Murder. Glynn Superior Court. Before Judge Williams.

Kevin R. Gough, for appellant.

Jacquelyn L. Johnson, District Attorney, Andrew J. Ekonomou, Assistant District Attorney; Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Jason M. Rea, Assistant Attorney General, for appellee.

---

defendant to testify because he feared the jury would learn of defendant's prior convictions even though the convictions were already in evidence. Visger v. State, 953 S2d 741, 744 (Fla. Ct. App. 2007).