**THIRD DIVISION
DOYLE, P. J.,
REESE and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**October 25, 2021**

# In the Court of Appeals of Georgia

A21A0840. HALL v. THE STATE.

REESE, Judge.

This is Bertram Hall's second appeal in this Court. In his prior appeal, we held that the evidence was sufficient to support his conviction for burglary, but remanded for an order on his constitutional speedy trial claim, and declined to consider his remaining arguments on appeal.[1] The trial court subsequently entered a new speedy trial order, and Hall now appeals, arguing that the trial court erred in: (1) allowing the State to present evidence regarding his burglary conviction from 1990; (2) failing to instruct the jury on criminal trespass; (3) finding that he did not receive ineffective assistance of counsel; (4) failing to recuse itself because the trial judge previously

---

[1] See *Hall v. State*, Case No. A20A1159 (October 27, 2020) (unpublished).

represented Hall; and (5) denying his motion for discharge and acquittal for deprivation of his right to a speedy trial. For the reasons set forth infra, we affirm.

We summarized the facts regarding the burglary in Hall's previous appeal:

> The house that was burglarized ("Subject House") was located at 2376 Old McDuffie Road in Richmond County. As of the date of the break-in, no one had been living there for at least eleven months — its former owner/resident had been killed in June 2013.
>
> At about 12:10 a.m. on Thursday, May 29, 2014, the man who had recently begun living intermittently next door to the Subject House was alerted by the loud noise of a vehicle repeatedly traveling up and down the street. The man (hereinafter, "Tenant") had become familiar with the distinctive sound as coming from a certain white van with red rims. Earlier that week, the Tenant had observed a man from that van intruding into the house in which he (the Tenant) was living. Thus concerned that the van had returned to the neighborhood, the Tenant went outside to covertly monitor the situation.
>
> The Tenant saw the white van with the red rims stop briefly at the Subject House, where a passenger exited the vehicle. Shortly thereafter, the Tenant heard what sounded like a window being broken. The Tenant called his landlord who was living in the house on the other side of him, and reported what he had seen and heard at the Subject House. The landlord relayed the Tenant's report to police, then joined the Tenant outside. Meanwhile, the driver of the van traversed up and down the street several more times, before eventually parking at the Subject House.

Responding officers arrived on the street with sirens activated and lights flashing, but drove past the Subject House. The driver of the van abruptly cranked the vehicle and sped away. When the officers circled-back toward the Subject House, they were flagged down by the Tenant and his landlord who gave their reports. One of the officers entered the Subject House and discovered a man inside; the man was handcuffed, walked outside, questioned, and eventually placed in the back of a patrol car.

Shortly thereafter, the loud white van with the red rims cruised by the Subject House. Identified by the Tenant and the landlord as the vehicle that had just fled the scene, the van was stopped by police. Hall was driving the van; after a brief roadside talk, police allowed Hall to drive away.

The man who was removed from the Subject House was Ricky Lee Goree. After waiving his Miranda rights, he gave a statement to an investigator assigned to the case. In his statement, Goree identified (appellant) Hall as the driver of the white van with red rims who had dropped him off at the Subject House. Goree recounted that Hall had promised to give him cash if he would help him remove from the house a furnace, a couch, and curtain rods. Goree admitted that he had agreed to do so, and thus entered the house. Goree told in his statement that before Hall dropped him off at the Subject House on the night in question, Hall had pointed out two other "abandoned" houses in the same neighborhood as the Subject House; Hall revealed to Goree that he (Hall) had already removed appliances out of one, and was planning to "hit" the other one.

. . .

3

Goree was co-indicted with Hall on the burglary charge. He entered a negotiated guilty plea pursuant to which he agreed to testify at Hall's trial. On the stand at Hall's trial, Goree admitted that police had caught him inside the Subject House at the time in question. Goree characterized the house as "abandoned," and recounted that Hall had driven him there in a white van with red rims. Goree testified that he took tools with him into the Subject House. Goree testified that although Hall left to run an errand, their plan was that Hall would return to the Subject House and pick him up "after I got done what I had to (sic.) done."

. . .

During the interview with the investigator, the Tenant stated that the person who had twice broken into the house in which he was living was the same man who was driving the van when the Subject House was burglarized. The Tenant also gave a physical description of that man. The Tenant's interview was recorded, and played for the jury.

. . .

The State ended its case in chief with evidence that Hall had been involved with the burglary of a residence in 1990. Moments after that crime was reported to law enforcement, Hall was arrested after he was stopped driving the reported truck that contained items stolen from the residence, including a sink and cabinets. In a police statement, Hall admitted that he had committed the burglary.

Fifty-three years old at the time of his trial for the instant burglary charge, Hall took the stand as the sole defense witness, and denied having any involvement in the charged crime. Hall admitted that Goree had been a passenger in the van that he was driving shortly before the

4

Subject House was burglarized, but elaborated that Goree had asked him for a ride to someone's house to fix a car, that he had agreed to give Goree a ride, that he had thus "dropped [Goree] off on Old McDuffie road with lights on, cars in the yard," and that he had then proceeded on his way to take care of an errand. Hall testified that as he was heading back home, he went back to try to get Goree "at the house with lights on and cars in the yard; it wasn't an abandoned house." About that time, Hall recounted at trial, he was pulled over by police, was asked about the man to whom he had just given a ride, and was then allowed to go about his way.

. . .

On cross-examination, Hall acknowledged that he had been convicted several times before for: (i) a burglary committed in January 2010; (ii) two other burglaries for prying open stores and stealing cigarettes; and (iii) a 2008 burglary for entering a business. Hall insisted, however, he had "paid for [his] mistakes" and that those convictions had nothing to do with the burglary for which he was then being prosecuted.[2]

After our remand from Hall's first direct appeal, the trial court denied Hall's speedy trial claim. This appeal followed.

---

[2] See *Hall*, Case No. A20A1159 at 2-10.

We review the trial court's rulings on the admission of other acts evidence and Hall's constitutional speedy trial claim for an abuse of discretion.[3] In reviewing Hall's ineffective assistance of counsel claim, "we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts."[4] Whether a jury instruction of a lesser-included offense was warranted and whether the circumstances necessitated recusal are legal questions we review de novo.[5] With these guiding principles in mind, we now turn to Hall's claims of error.

1. Hall argues that the trial court erred in admitting other transaction evidence regarding a burglary from 1990 under OCGA § 24-4-404 (b) ("Rule 404 (b)"). He contends that the prejudicial effect of the evidence outweighed its probative value, and that the evidence only showed that Hall had a propensity to commit burglaries, an impermissible purpose.

---

[3] See *Armstrong v. State*, 310 Ga. 598, 602 (2) (852 SE2d 824) (2020); *Holland v. State*, 357 Ga. App. 87, 88 (850 SE2d 170) (2020).

[4] *Bridges v. State*, 286 Ga. 535, 537 (1) (690 SE2d 136) (2010) (citations and punctuation omitted).

[5] See *Walker v. State*, 311 Ga. 719, 722 (2) (859 SE2d 25) (2021); *State v. Wakefield*, 324 Ga. App. 587 (751 SE2d 199) (2013).

Rule 404 (b) provides, in relevant part:

Evidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.[6]

However,

[e]ven relevant evidence offered for a proper purpose under Rule 404 (b) may be excluded under OCGA § 24-4-403 ("Rule 403") . . . "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."[7]

Thus, to summarize, in order for the evidence to be admissible, the State must show that:

(1) evidence of extrinsic, or other, acts is relevant to an issue other than a defendant's character;[8] (2) the probative value of the other acts evidence is not substantially outweighed by its unfair prejudice, i.e., the

---

[6] OCGA § 24-4-404 (b).

[7] *State v. Jones*, 297 Ga. 156, 158 (1) (773 SE2d 170) (2015) (quoting OCGA § 24-4-403).

[8] See Rule 404 (b).

evidence must satisfy the requirements of Rule 403; and (3) there is sufficient proof so that the jury could find that the defendant committed the act in question.[9]

In this case, the 1990 burglary was relevant to show Hall's intent. Hall's intent was the central question for the jury below: whether Hall was merely giving Goree a ride, or whether Hall and Goree were accomplices in the burglary. Because Hall's intent was at issue, this other act evidence is relevant to an issue other than Hall's character under Rule 404 (b).[10]

Nor was the probative value of the evidence outweighed by unfair prejudice under Rule 403. "The exclusion of relevant evidence under this [rule] is an extraordinary remedy which should be used only sparingly, since it permits the trial court to exclude concededly probative evidence."[11] Hall strongly contested the issue of intent, and the trial court "mitigated the prejudicial impact of the other-act evidence by giving the jury specific instructions about the limited purpose of the

---

[9] *Jones*, 297 Ga. at 158-159 (1).

[10] See *Castillo-Velasquez v. State*, 305 Ga. 644, 649 (2) (827 SE2d 257) (2019); *Harvey v. State*, 344 Ga. App. 761, 769 (2) (a) (i) (811 SE2d 479) (2018).

[11] *Harvey*, 344 Ga. App. at 769-770 (2) (a) (ii) (punctuation and footnote omitted).

evidence[.]"[12] Additionally, the State later introduced evidence of other burglaries for impeachment purposes after Hall testified in his own defense, minimizing the potential prejudicial impact of the 1990 burglary.[13]

For these reasons, the trial court did not abuse its discretion in admitting evidence regarding the 1990 burglary.

2. Hall argues that the trial court should have instructed the jury on criminal trespass.

"[I]n order to authorize a jury instruction on a lesser included offense, there must be some evidence in the record that the defendant committed that offense."[14] A conviction for criminal trespass, under the facts of this case, would require that Hall entered the property for some "unlawful purpose[.]"[15] However, Hall has not posited what this unlawful purpose might have been. Thus, "there was no evidence to support the requested criminal trespass charge because [Hall] did not cite any evidence that

---

[12] *Castillo-Velasquez*, 305 Ga. at 649 (2).

[13] See *Williams v. State*, 328 Ga. App. 876, 880-881 (1) (763 SE2d 261) (2014) (holding that the trial court's failure to correctly apply Rule 403 was harmless in light of the defendant's own testimony regarding his criminal record).

[14] *Daniel v. State*, 301 Ga. 783, 785 (II) (804 SE2d 61) (2017).

[15] OCGA § 16-7-21 (b) (1).

he was on the [property] for an unlawful purpose other than theft."[16] As summarized by a trial court in a similar case, "either this was a burglary for the jury to determine or there was no crime committed at all."[17]

Accordingly, the trial court did not err in refusing to instruct the jury on criminal trespass.

3. Hall argues that trial counsel provided ineffective assistance by failing to hire an expert to test the blood found at the Subject House.

> To evaluate [Hall's] claim of ineffective assistance of counsel, we apply the two-pronged test established in *Strickland v. Washington*,[18] which requires him to show that his trial counsel's performance was deficient and that the deficient performance so prejudiced him that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. Importantly, should a defendant fail to meet his burden on one prong of this two-prong test, we need not review the other prong. In addition, there is a strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct, and a criminal defendant must overcome this presumption. In fact, the reasonableness of counsel's conduct is examined from counsel's perspective at the time of trial and under the

---

[16] *Daniel*, 301 Ga. at 788 (III).

[17] Id. at 786 (III) (punctuation omitted).

[18] 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984).

particular circumstances of the case. And decisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if they were so patently unreasonable that no competent attorney would have followed such a course.[19]

At trial, an investigator testified that he recovered blood from blood stains at the Subject House, but he could not determine where and when the blood originated from, and no match of the blood to an individual was entered into evidence. At the motion for new trial hearing, trial counsel testified that his theory of the defense was that Hall had simply dropped Goree off at the Subject House and that Hall was not involved in the robbery. While counsel testified that an exculpatory blood test could have been useful, it would not have prevented the State from proceeding on its theory that Hall was a party to the crime.

Here, Hall fails to demonstrate deficient performance. "Typically, the decision whether to present an expert witness is a matter of trial strategy that, if reasonable, will not sustain a claim of ineffective assistance."[20] That decision was reasonable here

---

[19] *Johnson v. State*, __ Ga. App. __, __ (4) (861 SE2d 660) (2021) (punctuation and footnotes omitted).

[20] *Martin v. State*, 306 Ga. 747, 751 (3) (a) (833 SE2d 122) (2019) (citation and punctuation omitted).

11

where a blood test would not have been particularly relevant to counsel's defense strategy.[21] Hall also fails to demonstrate prejudice, as he did not submit any evidence at the motion for new trial hearing as to what the blood test would have shown. Hall "was required to offer more than mere speculation that the [evidence] and expert testimony would have bolstered his defense at trial."[22] Accordingly, the trial court did not err in denying this claim.[23]

4. Hall argues that the trial judge should have recused himself because he previously represented Hall regarding burglary and criminal trespass charges from 2001.

"When considering the issue of recusal, both OCGA § 15-1-8 and . . . the Code of Judicial Conduct should be applied. The Code of Judicial Conduct provides a

---

[21] See id. at 751-752 (3) (a).

[22] *Mangrum v. State*, 291 Ga. 529, 531 (731 SE2d 761) (2012) (citation and punctuation omitted).

[23] In a single line of argument, Hall also contends that trial counsel should have objected further to the admission of evidence regarding the 1990 burglary. Putting aside that counsel did object to the admission of this evidence, given our holding in Division 1 above, "[t]he failure to make a meritless objection cannot serve as a ground for an ineffective assistance claim." *Young v. State*, 305 Ga. 92, 97 (5) (823 SE2d 774) (2019).

broader rule of disqualification than does OCGA § 15-1-8."[24] None of the provisions of OCGA § 15-1-8 apply to the facts of this case, however, under Rule 2.11 (a) of the Code of Judicial Conduct, "[j]udges shall disqualify themselves in any proceeding in which their impartiality might reasonably be questioned[.]"[25] "The alleged bias of the judge must be of such a nature and intensity to prevent the defendant from obtaining a trial uninfluenced by the court's prejudgment."[26] The Supreme Court of Georgia has cited with approval federal court holdings that "a judge's prior representation of a witness or a party in an unrelated matter does not automatically require disqualification."[27] Here, Hall has pointed to no actions by the trial judge showing bias or impartiality. Thus, the trial judge's prior representation of Hall, without more, did not require recusal.[28]

5. Hall argues that the trial court erred in denying his constitutional speedy trial claim.

---

[24] *Barnett v. State*, 300 Ga. 551, 554 (2) (796 SE2d 653) (2017).

[25] Ga. Code Jud. Conduct Rule 2.11 (a).

[26] *Barnett*, 300 Ga. at 554 (2) (citation and punctuation omitted).

[27] Id. at 555 (2) (citations and punctuation omitted).

[28] See id. at 555-556 (2).

13

A constitutional speedy trial claim is evaluated under a two-part framework. First, the trial court must consider whether the length of time between the defendant's arrest and trial is sufficiently long to be considered presumptively prejudicial. If not, the speedy trial claim fails at the threshold. A delay of one year or more is typically presumed to be prejudicial.

If the presumptive-prejudice threshold is crossed, as it was in this case, the trial court proceeds to the second part of the framework, applying a context-focused, four-factor balancing test to determine whether the defendant was denied the right to a speedy trial. These four factors are (1) the length of the delay; (2) the reasons for it; (3) the defendant's assertion of his right to a speedy trial; and (4) prejudice to the defendant. This second part of the speedy trial analysis requires courts to engage in a difficult and sensitive balancing process and necessarily compels them to approach speedy trial cases on an ad hoc basis.[29]

The record shows that Hall was indicted in August 2014 and tried in August 2018. The trial court found that this delay was presumptively prejudicial, and proceeded to analyze Hall's speedy trial claim under the four-factor balancing test. In considering the second factor, the reason for the delay, the trial court found that

---

[29] *Redding v. State*, 309 Ga. 124, 128-129 (3) (844 SE2d 725) (2020) (citations and punctuation omitted).

Hall made repeated demands for new counsel, and that this delayed his trial. The court noted that Hall had been represented by no less than five lawyers. Additionally, the State announced that it was ready for trial as early as 2016, but that Hall had requested a continuance so that he could obtain new counsel. With respect to the third factor, the court found that Hall had made both pro se and counseled demands for a speedy trial, and thus this factor weighed in his favor. Finally, in considering the fourth factor, the court found that Hall failed to show oppressive pretrial incarceration, since he admitted at trial that he was incarcerated for a parole violation, and that he failed to proffer witnesses or evidence that he would have presented at trial but for the delay. In balancing these four factors, the court found that Hall's speedy trial rights were not violated.

We discern no abuse of discretion in the trial court's conclusions.[30] In his appellate brief, Hall primarily takes issue with the court's analysis of the fourth

---

[30] See *Rackoff v. State*, 275 Ga. App. 737, 738 (1) (b) (621 SE2d 841) (2005) (holding that the State cannot be faulted for a delay attributable to the defendant's pre-trial motions). A transcript of the speedy trial hearing was not included in the appellate record. See also *Dempsey v. State*, 267 Ga. App. 661 (600 SE2d 735) (2004) ("Generally, absent a transcript, every presumption of legality will be made in favor of a judgment by a court of competent jurisdiction; and it will be presumed that a judgment of a court of competent jurisdiction is supported by every fact essential to make such judgment valid and binding.") (citations and punctuation omitted).

factor. He contends that the delay prejudiced him in preserving an "alibi defense" in the form of a video recording that would have shown him picking up a woman from a jail at the time the burglary occurred. However, Hall did not present an alibi defense at trial — he instead admitted to dropping off Goree and driving back to the Subject House, and it was undisputed at trial that Hall was not at the house when the police caught Goree burglarizing the house. Accordingly, even if such a video recording existed and was lost by the delay, it would not have bolstered Hall's defense.[31] The trial court thus did not abuse its discretion in denying his constitutional speedy trial claim.

*Judgment affirmed. Doyle, P. J., and Brown, J., concur*.

---

[31] See *Jones v. State*, 296 Ga. 561, 571 (7) (769 SE2d 307) (2015) (affirming the denial of a motion for new trial where the defendant had failed to present evidence that his ability to present a defense was prejudiced by the delay).