**THIRD DIVISION**
**DOYLE, P. J.,**
**REESE, J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**June 22, 2022**

# In the Court of Appeals of Georgia

A22A0258. DUKES v. THE STATE.

REESE, Judge.

A Walton County jury found Latwon Dukes guilty of one count of aggravated battery.[1] Dukes filed an amended motion for new trial, which the trial court denied. Dukes appeals, arguing that the trial court erred by (1) making improper comments on witness testimony, (2) testifying as a witness in the jury's presence, (3) coaching the prosecutor on how to try the case, and (4) interposing objections on the State's behalf. For the following reasons, we affirm.

Viewed in the light most favorable to the verdict,[2] the evidence shows that in January 2018, the victim shared an apartment with his fiancée, his two children, his

---

[1] See OCGA § 16-5-24 (a).

[2] See *Johnson v. State*, 340 Ga. App. 429, 430 (797 SE2d 666) (2017).

sister, and Dukes. Believing that the environment was no longer "suitable" for their children, the victim and his fiancée decided to turn off the power and move out to "get rid of" Dukes and the sister. Two days later, the victim returned to gather some belongings. After finding holes in the walls and food all over the floor, the victim called his sister. The fiancée noticed that Dukes seemed "really mad" because it was mainly Dukes's belongings that had been touched. The fiancée offered to call the police, but Dukes insinuated that Dukes would get "revenge" instead. Everyone eventually left the apartment. Because the only untouched room belonged to the victim's sister, the victim called and threatened her because the victim believed that she was behind the destruction.

That evening, the victim returned to the apartment alone. While he was inside, a crowd gathered outside, including Dukes, Dukes's cousin, Rashard Blackwell, and the victim's sister, who had brought several people with her because of her brother's threats, including Jamie Edwards. The group began yelling insults at the victim, who yelled back but stayed at the threshold of the apartment. Dukes was also inquiring about missing belongings. At one point, the victim received a call from his fiancée who, after hearing the commotion in the background, had her father accompany her to the apartment to check on the victim. When the fiancée arrived, someone in the

crowd threatened to assault her if the victim did not come outside. In response, the victim came outside to convince his fiancée to leave, but when he tried to return to the apartment, Dukes "blindsided" him by tackling him to the steps from behind and then hit him with closed fists.

The victim testified at trial that he did not remember anything else after Dukes tackled him. The fiancée and her father recalled how Dukes, Blackwell, and Edwards continued to beat the victim for several minutes, even after he lost consciousness. The attack stopped when the sister yelled that the police were coming, causing Dukes and the other assailants to get into their cars and leave. Blackwell testified that Dukes had a hand wound and that Dukes made a comment as they drove away to the effect of "I think I might have hit [the victim] in his mouth, his tooth or something[.]" The responding officer testified that the cut on Dukes's hand was "consistent with a tooth mark from hitting somebody in the mouth."

As a result of the beating, the victim's jaw swelled. He had chipped and broken teeth, injuries from where his broken tooth went through his lips, and holes in his gums. An exposed nerve in one tooth caused "excruciating" pain, and at the time of trial, his back tooth was still chipped because he could not afford to fix it. The injuries caused the victim to have mouth pain and trouble speaking, as well as

difficulty eating, drinking, and working. Dukes was indicted for aggravated battery by rendering the victim's tooth useless.

At trial, Dukes raised self-defense, and called Blackwell and Edwards as witnesses. Dukes testified at trial that the victim had a bottle in his hand, and although Dukes "didn't know if [the victim] was going to hit [Dukes] with the bottle or not," Dukes "made the decision" to hit him first as he came down the stairs.

Following the guilty verdict and sentence, Dukes filed an amended motion for new trial, which the trial court denied. This appeal follows.

Where the defense fails to make an objection under OCGA § 17-8-57 at trial, we review a trial court's allegedly improper comments only for plain error.[3] "To establish plain error, [the] Appellant must point to a legal error that was not affirmatively waived, was clear and obvious beyond reasonable dispute, affected his substantial rights, and seriously affected the fairness, integrity, or public reputation of judicial proceedings."[4] If one prong of the plain error test is not satisfied, we need

---

[3] See OCGA § 17-8-57 (b); *Crenshaw v. State*, 341 Ga. App. 406, 407 (801 SE2d 92) (2017).

[4] *Bamberg v. State*, 308 Ga. 340, 352 (5) (839 SE2d 640) (2020) (citations and punctuation omitted).

not address the remaining prongs.[5] With these guiding principles in mind, we turn now to Dukes's claims of error.

1. Dukes argues that the trial court erred by making improper comments on witness testimony within the presence of the jury in violation of OCGA § 17-8-57. We disagree.

OCGA § 17-8-57 (a) (1)[6] provides that "[i]t is error for any judge, during any phase of any criminal case, to express or intimate to the jury the judge's opinion as to whether a fact at issue has or has not been proved or as to the guilt of the accused." "The purpose of OCGA § 17-8-57, at least in part, is to prevent the jury from being influenced by any disclosure of the trial court's opinion regarding the credibility of a witness."[7]

(a) *Admonishing the witness not to speculate.* At trial, defense counsel asked Edwards what she saw the victim do during the altercation. Edwards testified that she saw the victim come toward Dukes with a bottle and saw Dukes hit the victim.

---

[5] See *Wilson v. State*, 291 Ga. 458, 460 (729 SE2d 364) (2012).

[6] Dukes does not contend that the trial court expressed an opinion as to Dukes's guilt. Therefore, OCGA § 17-8-57 (c) does not apply.

[7] *Evans v. State*, 360 Ga. App. 596, 610 (12) (859 SE2d 593) (2021) (citation and punctuation omitted).

Edwards then testified that "[the victim] had to hit back for [Blackwell] to jump in[.]" At that point, the trial court told Edwards, "It's what you saw, not what you speculate. Don't be speculating on things." Edwards later clarified that she "saw the victim hit like one or two times[ ]" with a beer bottle.

"It is well established that a trial [court] may propound questions to a witness to develop the truth of the case, to clarify testimony, to comment on pertinent evidentiary rules[,] and to exercise its discretion when controlling the conduct of counsel or witnesses in order to enforce its duty to ensure a fair trial to both sides."[8] Here, the trial court's remarks were merely aimed at informing Edwards that she was required to testify from personal knowledge. Thus, Dukes has failed to show how the trial court's statement was error that was "clear and obvious beyond reasonable dispute," and she has failed to prove plain error.[9] Nevertheless, even if the trial court's remarks amounted to error, the error has not been shown to affect Dukes's

---

[8] *Bamberg*, 308 Ga. at 353 (5) (citation and punctuation omitted).

[9] See id.; see also *Dickens v. State*, 280 Ga. 320, 324 (3) (627 SE2d 587) (2006) (holding that the trial court did not violate OCGA § 17-8-57 by instructing the witness to answer only from her own knowledge and not based on hearsay); *Rolland v. State*, 321 Ga. App. 661, 664 (1) (a) (742 SE2d 482) (2013) (holding that the trial court's remarks aimed at preventing a witness from speculating did not violate OCGA § 17-8-57).

6

substantial rights, because the witness's clarification that she saw the victim hit back "one or two times" with a beer bottle supported Dukes's self-defense theory.[10] Accordingly, this claim of error fails.

(b) *Interjecting during the witness's silence.* Next, Dukes complains that during a different portion of Edwards's testimony, the trial court interjected when Edwards sat silent for a period of time after the State asked her a question:

> THE STATE: And at that point in time, that is when the victim fell down the stairs or at least fell down?
> THE COURT: You are going to have to come up with an answer at some point in time. If you don't know, just say I don't know.
> EDWARDS: Yeah. I am trying to think.
> THE COURT: We've sat out here for 20 seconds for you to try to think.
> EDWARDS: I'm sorry.
> THE COURT: Either give an answer or say I don't know.
> EDWARDS: I don't know.

Dukes argues that through this colloquy, the trial court implied that Edwards was "having to come up with an answer," or in other words, that she was "making something up rather than remembering back to the incident date." Our review of the

---

[10] See, e.g., *Smith v. State*, 299 Ga. 424, 431-432 (2) (d) (788 SE2d 433) (2016) (holding that any error in admitting evidence which appeared to have aided the defense was harmless).

7

transcript reveals no violation of OCGA § 17-8-57 because the trial court's comments were made for the purpose of controlling the trial and did not express an opinion regarding the credibility of the witness or the guilt of the accused.[11] Furthermore, Dukes's claim again fails the second plain-error prong. OCGA § 24-6-611 (a) provides that "the trial court shall exercise reasonable control over the mode . . . of interrogating witnesses and presenting evidence so as to [m]ake the interrogation and presentation effective for the ascertainment of the truth [and to a]void needless consumption of time[.]" Therefore, Dukes has not pointed to any clear and obvious error, and this claim is without merit.

(c) *Instructing the witness to give a responsive answer.* Third, Dukes raises error with the trial court's statements during Blackwell's testimony. Defense counsel asked Blackwell, "What did you do [during the altercation]?" Blackwell replied, "At first I didn't do nothing. I was trying to keep [Dukes and the victim] separated. That is what I was trying to do." The trial court then interjected: "The question is: What did you do?" Blackwell responded, "Well, after a while yes, I did like pull them apart and that really was it."

---

[11] See *Alexander v. State*, 294 Ga. 345, 348 (3) (751 SE2d 408) (2013).

Dukes contends that the trial court's statement implied that Blackwell's answer "was not truthful or was not responsive," and that the trial court was making a judgment on Blackwell's credibility. Because Dukes again fails to satisfy the second plain-error prong, this argument is also without merit. Defense counsel asked Blackwell what he actually did, but he responded with what he was "trying" to do. "A trial court's instruction to a witness to give responsive answers does not intimate an opinion as to the witness's credibility[.]"[12] Under these circumstances, the trial court properly directed the witness's attention to the question that was asked.[13]

(d) *Clarifying Blackwell's testimony.* Finally, Dukes contends that the following statements by the trial court violated OCGA § 17-8-57 and were an impermissible comment on Blackwell's credibility:

> THE STATE: But [what] you testified to earlier today was that you were with Latwon Dukes while Latwon Dukes was attacking [the victim]; is that right?
> BLACKWELL: Yes, sir.

---

[12] *Anthony v. State*, 282 Ga. App. 457, 458 (1) (638 SE2d 877) (2006).

[13] See *Finley v. State*, 286 Ga. 47, 51 (9) (a) (685 SE2d 258) (2009) ("A trial judge may propound questions to a witness to develop the truth of the case or to clarify testimony, and the extent of such an examination is a matter for the trial court's discretion.") (citation omitted).

9

THE STATE: And at no point in time did you ever strike [the victim] during the course of this incident?

BLACKWELL: I did.

THE STATE: Okay. And what you are saying is that —

THE COURT: Hold on a second. Listen to what he says. You asked him if he made a statement and I am not sure he didn't answer the ultimate question as opposed to saying yes, I did make a statement.

Do you understand what I'm saying? Because you had earlier said I testified a certain way, and then I said, well, the reality is what did you really do? At that point in time you said, yes, I did hit him.

BLACKWELL: Yes.

Dukes has again failed to point to a clear and obvious error. Viewed in context, the trial court was attempting to clarify whether Blackwell meant that he had hit the victim during the incident — the "ultimate question," as referred to by the trial court — or whether Blackwell meant that he had not previously *testified* that he had hit the victim. The trial court's questions were a permissible exercise of its discretion to clarify a witness's testimony and not an expression or intimation of opinion.[14] Thus, the trial court did not violate OCGA § 17-8-57, and this claim fails.

---

[14] See *Finley*, 286 Ga. at 51 (9) (a).

2. Dukes appears to argue[15] that the trial court violated OCGA § 17-8-57 by "testifying as a witness in the presence of the jury[ ]" during two specific exchanges.

The first exchange occurred when the responding officer testified that he arrived at the scene with two other officers, and that "one of them was an F. T. O." In response, the trial court remarked that "F. T. O. means Field Training Officer. I can't ever get anybody to quit using acronyms to tell us." This passing, isolated statement, which was neither contradicted nor referred to again during the trial, is unlikely to have played any role in the jury's verdict whatsoever, let alone when viewed in context with all of the evidence of guilt.[16] Consequently, Dukes has failed to show that the trial court's remark affected Dukes's substantial rights, so this claim fails.

The second exchange occurred when the State asked Blackwell whether the victim was "knocked unconscious" after Dukes punched the victim the first time:

---

[15] The only relevant case law that Dukes cites in support of this claim is *Finley*, 286 Ga. at 51 (9), which involves an alleged violation of OCGA § 17-8-57. Accordingly, we will review this enumeration under the same framework.

[16] See *Hightower v. State*, 304 Ga. 755, 759 (2) (b) (822 SE2d 273) (2018) (holding that the trial court's statement that a doctor was a "frequent witness in Fulton Court" was not clear and obvious error because the comment indicated nothing about the doctor's guilt, did not relate to a disputed issue, and had no likelihood of affecting the outcome of the trial).

11

BLACKWELL: Unconscious, meaning you ain't moving, right?

THE STATE: Yes.

BLACKWELL: He was moving.

BLACKWELL: Okay. So the victim –

THE COURT: Unconscious does not mean that you ceased moving, it means that you lose consciousness, that your eyes are closed, you are out. Your body can be doing anything.

BLACKWELL: Well, no, he wasn't unconscious. His eyes were open.

As an initial matter, Dukes's argument fails the second, plain-error prong because the trial court's statements did not constitute a clear and obvious legal error. Here, it appears that the witness was unclear about the meaning of the word "unconscious" and gave an ambiguous answer. Under those circumstances, the trial judge was permitted to essentially question the witness to develop the truth of the case or to clarify testimony.[17] Furthermore, following the trial court's intervention, Blackwell testified that the victim was "not unconscious" and that his "eyes were open" during the fight. Because this testimony supported the self-defense theory, Dukes cannot show that the trial court's comments adversely affected Dukes's substantial rights.[18] Thus, this claim fails.

---

[17] See *Finley*, 286 Ga. at 51 (9) (a).

[18] See *Smith*, 299 Ga. at 431-432 (2) (d).

3. Next, Dukes argues that the trial court "exit[ed] its role as a neutral arbiter or referee in the case and coach[ed] the prosecutor on how to try his case[,]" rendering the trial unfair. Dukes specifically identifies three areas of alleged coaching: two involving the trial court's comments on the admission of Edwards's and Blackwell's certified convictions for their involvement in the victim's beating, and one involving the trial court's instruction to the State on how to properly use a transcript to impeach Dukes. We find no error.

At the outset, we note that Dukes neither objected to the trial judge's comments nor moved to recuse the judge below and thus failed to properly preserve this claim of error for appellate review.[19] Nevertheless, "[e]ven assuming that bias on the part of a trial judge so profound and pervasive as to implicate the constitutional guarantee of due process need not be raised in the trial court by way of a timely motion to recuse,"[20] this case presents no such bias.

> [T]he constitutional guarantee of due process is not concerned
> with mere appearances of partiality. To the contrary, due process is

---

[19] See *Dunn v. State*, 325 Ga. App. 888 (1) (756 SE2d 17) (2014); see also *Pyatt v. State*, 298 Ga. 742, 749-750 (5) (784 SE2d 759) (2016) (explaining that a party must promptly move to recuse once learning of potential grounds for disqualification of a trial judge).

[20] *Pyatt*, 298 Ga. at 750 (5).

13

concerned with *actual* bias, and absent a showing of actual bias, due process requires recusal only in particular circumstances in which the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable.[21]

Moreover, "[t]he law presumes honesty and integrity on the part of those serving as adjudicators[.]"[22] Dukes has failed to rebut that presumption.

Dukes first contends that the trial court improperly coached the prosecutor following Edwards's testimony. During a bench conference, the trial court stated that it was "confounded" by the State's failure to "tell the jury that [Edwards] pled guilty yesterday to the charges[ ]"after Edwards testified that "she [was] just sitting [t]here watching these things go on[,]" and suggested that doing so would have been "the most powerful part of any cross-examination[.]" The State responded that it had intended to introduce Edwards's conviction, but "failed to do that." The trial court stated that it was "very, very, very, very, very frustrated up here about all of this[,]" and asked the State whether it intended to recall Edwards, to which the prosecutor answered yes. A few minutes later, the trial court stated that based on Edwards's trial

---

[21] *Barnett v. State*, 300 Ga. 551, 554-555 (2) (796 SE2d 653) (2017) (citations and punctuation omitted).

[22] *Pyatt*, 298 Ga. at 753 (5) (citation and punctuation omitted).

testimony, it thought the prosecutor could ask her "if she pled guilty yesterday and admitted to making an admission[,]" and then asked the prosecutor, "you got a first offender, don't we, with [Edwards]?" When the State responded affirmatively, the trial judge informed the State that in that case, the impeachment was "not about her having a conviction," but "what [Edwards] did out here in open court yesterday in relationship to this case[.]"

Dukes contends that there were "multiple issues with this conversation[ ]" because the trial judge denoted a "team effort" by referring to himself and the prosecutor as "we," and inappropriately instructed the prosecutor on how to impeach Edwards when she was recalled, including instructions on what questions to ask.

In context, however, the trial judge's use of "we" was a reference to both the judge and the prosecutor being present when Edwards entered her guilty plea, and therefore is not indicative of actual bias. Moreover, the judge's instructions on how to impeach Edwards addressed the trial court's apparent concern that the State limit its use of the first-offender plea to a permissible purpose. "[T]he trial judge is charged with ensuring that the rules of evidence and procedure are followed, and that the proceedings are both orderly and fair."[23] Thus, the trial court's decision to make the

_____

[23] *Johnson v. State*, 278 Ga. 344, 348 (3) (602 SE2d 623) (2004).

prosecutor "clear about what [he could] and [could not] do[ ]" with the evidence was proper, and does not support a finding of actual bias.[24] Accordingly, this claim is without merit.

As to the second area of alleged coaching, the record shows that the prosecutor asked Blackwell several questions about pleading guilty to his involvement in the incident. At a bench conference, the trial court asked the prosecutor why he did not impeach Blackwell with his certified conviction, to which the prosecutor answered that "[i]t was [his] failure to do that[,]" and that he "felt like [he] could just cross-examine [Blackwell]" on the subject. The trial court then asked the prosecutor whether he thought that obtaining a certified conviction of a co-defendant was "needed in preparation of the case[,]" to which the prosecutor responded, "I do think it's the best policy to do that." The prosecutor then requested to recall Blackwell and Edwards, but the trial court responded that the State "can't do that during the defendant's case[,]" and explained that the State would have to make such a motion "at the conclusion when [the defense] rest[s]." Later, when the trial court allowed the

---

[24] See *Bonner v. State*, 295 Ga. 10, 14-15 (3) (757 SE2d 118) (2014).

16

State to reopen the evidence,[25] the prosecutor attempted to tender Blackwell's certified conviction without first introducing it. The trial court corrected the prosecutor by telling him, "You have to have the witness identify State's [exhibit] 6 [i]f he knows what it is."

Dukes argues on appeal that by "aid[ing]" and "assist[ing]" the prosecutor, the trial court "stepped out of its role as a neutral arbiter[.]" We disagree. While "coaching" by the trial judge "*might* be indicative of an actual bias in favor of the State," here, it appears to be indicative of "judicial frustration" with the prosecuting attorney for neither being prepared nor properly introducing evidence.[26] Indeed, from the beginning of trial, the judge expressed concern that the lawyers did not "act like [they] underst[oo]d the fundamentals." Under these circumstances, this sort of alleged "coaching" fails to rise to the level of actual bias.[27]

The third instance occurred during the State's cross-examination of Dukes, when the prosecutor attempted to impeach Dukes's trial testimony with prior

---

[25] Defense counsel affirmatively stated that there was no objection to the trial court reopening the evidence for this purpose.

[26] See *Pyatt*, 298 Ga. at 752, n. 12 (5).

[27] See id.

17

testimony. After the prosecutor questioned Dukes about Dukes's "earlier" testimony from a prior proceeding that Dukes "didn't even receive any injuries from this fight," Dukes seemed to be confused, asking, "When was earlier?" and "I said I didn't receive no injury?" At that point, the trial court interjected and told the prosecutor to show Dukes "exactly" what Dukes said in the transcript "and let's quit going back and around."

"When a judge sees a lawyer presenting his case in a way that seems to be wasting the time of the jury or confusing the jurors, we are aware of no absolute rule against the judge saying something to the lawyer, although the judge must take care not to do so by way of an impermissible ex parte conversation."[28] Here, the alleged coaching occurred in open court and in an effort to move along the testimony. Thus, this exchange discloses no actual bias, and Dukes's claim of an unfair trial in violation of the constitutional guarantee of due process fails.[29]

4. Finally, we turn to Dukes's contention that the trial court erred by interposing objections on the State's behalf and that by disallowing the leading

---

[28] *Pyatt*, 298 Ga. at 752, n. 12 (5).

[29] See id. at 751 (5).

questions, the trial court "assumed the role of advocate" in front of the jury, which "was harmful."

Dukes identifies two instances when the trial court admonished defense counsel for asking leading questions absent an objection by the State. The first time, the trial court told defense counsel: "Now, listen to me for a second. You got real upset when you claim[ed] the State was leading [its] witness and doing everything. So you can't do the exact same thing you were complaining the State [was] doing. You may ask [the witness] questions but not lead her into the answer which is contained in your question." The second time, the trial court stated: "Counselor, you know, I have had the statement with you before. The witnesses have to testify. You can only ask an open-ended question, not a question that the answer is actually in the question just as you just asked. So please adhere to that."

To the extent Dukes argues that the trial court was biased against the defense, Dukes did not move to recuse the trial court and has thus failed to properly preserve this issue for review.[30] Moreover, the record discloses no actual bias.[31] Instead, the trial court properly exercised its discretion to control the conduct of counsel by

---

[30] See *Pyatt*, 298 Ga. at 749-750 (5).

[31] See id. at 752-753 (5).

preventing defense counsel from asking leading questions on direct examination.[32]

Dukes has failed to show that the trial court's remarks were "harmful," considering that on both occasions, defense counsel was still permitted to ask the questions after rewording them. Thus, this enumerated error is without merit.

*Judgment affirmed. Doyle, P. J., concurs. Senior Appellate Judge Herbert E. Phipps concurs fully in Divisions 1, 2, and 4 and concurs specially in Division 3.*

---

[32] See *Bamberg*, 308 Ga. at 353 (5).

A22A0258. DUKES v. THE STATE.

PHIPPS, Senior Appellate Judge, concurring specially.

I concur fully in Divisions 1, 2, and 4 of the majority opinion, but I concur in the judgment only in Division 3. I write separately because while I agree that Dukes has failed to show bias sufficient to support a due process violation with respect to trial judge comments allegedly coaching the prosecutor in this case, I do not agree with all that is said in Division 3 and wish to highlight my thoughts with respect to that Division.

As the majority correctly points out, Dukes failed to preserve any argument that the trial judge coached the prosecutor and that the defendant's trial, therefore, was not fair and impartial. "The Georgia Code of Judicial Conduct states that judges must avoid all impropriety and the appearance of impropriety. . . . Additionally, judges are required to disqualify themselves in any proceeding in which their impartiality might reasonably be questioned." *Zerbarini v. State*, 359 Ga. App. 153, 169 (5) (855 SE2d

87) (2021) (citations and punctuation omitted). In this regard, a trial judge should not give advice to a lawyer about trial strategy in a case in which the judge is presiding because the giving of such advice could create an appearance of impartiality. See *Pyatt v. State*, 298 Ga. 742, 751 (5) (784 SE2d 759) (2016); accord *Cromer v. State*, 348 Ga. App. 113, 117 (2) (820 SE2d 269) (2018).

However, "[w]hen a party learns of potential grounds for disqualification of a trial judge, he must promptly move to recuse or the issue of disqualification is not preserved for appellate review." *Keller v. State*, 308 Ga. 492, 507 (10) (842 SE2d 22) (2020); accord *Dunn v. State*, 325 Ga. App. 888, 888 (1) (756 SE2d 17) (2014). As the Supreme Court of Georgia explained in *Keller*,

> to hold otherwise would be to sanction gamesmanship. Moreover, the requirement that a motion to recuse be filed promptly is intended to promote judicial economy, that is, to ensure that long and costly proceedings before a disqualified judge are avoided. The idea that a party could allow a judge whom the party believes to be disqualified to continue to preside over the case without objection, only later to urge the disqualification, is inconsistent with the principles of fair play and judicial economy that are embodied in the requirement that a motion to recuse be filed promptly.

308 Ga. at 507 (10) (citation and punctuation omitted); accord *Pyatt*, 298 Ga. at 749-750 (5). See also Uniform Superior Court Rule 25.1 (requiring recusal motion and accompanying affidavits to be filed within five days after first learning of the basis for disqualification). Here, Dukes never objected to the trial judge comments allegedly coaching the prosecutor, nor did Dukes move for a recusal. Under our precedents, therefore, Dukes has failed to preserve for appellate review any claim of error about the partiality of the trial judge in this case. See *Keller*, 308 Ga. at 507 (10); *Pyatt*, 298 Ga. at 749-750 (5); *Dunn*, 325 Ga. App. at 888 (1).

Moreover, while Dukes details the trial excerpts allegedly demonstrating improper coaching or partiality by the trial judge, Dukes does not cite a single relevant decision or statute in support of the argument,[1] and therefore Dukes has abandoned this claim. See *De Castro v. Durrell*, 295 Ga. App. 194, 204 (3) (671 SE2d 244) (2008) (deeming an enumeration of error abandoned where the appellant

---

[1] Dukes references *Finley v. State*, 286 Ga. 47 (685 SE2d 258) (2009), in the standard of review, but that decision addresses OCGA § 17-8-57 and a trial judge's expression or intimation of opinion regarding matters proved or the defendant's guilt, not the trial judge stepping out of his role as a neutral arbiter in other ways, as happened here. 286 Ga. at 51-52 (9). In addition, within the argument section of the appellate brief devoted to the issue, Dukes provides only a single, irrelevant citation: "If being a prosecutor was a crime, the judge would have been a party to that crime by his conduct as viewed through the lens of Georgia's parties to a crime statute, OCGA § 16-2-20." This statute does not address the impartiality of a trial judge at all.

failed to cite any legal authority in support thereof); see Court of Appeals Rule 25 (c) (2) ("Any enumeration of error that is not supported in the brief by citation of authority or argument may be deemed abandoned."). See also *Gresham v. Harris*, 349 Ga. App. 134, 138 (1), n. 9 (825 SE2d 516) (2019) (legal analysis "is, at a minimum, a discussion of the appropriate law as applied to the relevant facts") (citation, punctuation, and emphasis omitted). In light of Dukes's failure to preserve below any argument regarding the partiality of the trial judge or support this argument in the defendant's appellate brief, the majority improperly reached the merits of the argument. See *Keller*, 308 Ga. at 507 (10) (finding — without reviewing the issue for plain error — that the defendant failed to preserve a claim of error regarding trial judge impartiality).

Nonetheless, I turn to the merits of this case to emphasize the proper analysis and highlight my thoughts with respect to that analysis. In doing so, I must assume that Dukes's appellate brief may be read to raise a due process challenge based on the trial judge's improper coaching and that "bias on the part of a trial judge so profound and pervasive as to implicate the constitutional guarantee of due process need not be raised in the trial court by way of a timely motion to recuse." *Pyatt*, 298 Ga. at 750 (5). With these assumptions in mind, I note at the outset that while I agree with the

4

majority's conclusion that Dukes failed to demonstrate bias sufficient to support a due process violation, I believe the trial judge's comments in this case — at least with respect to coaching the prosecutor on the admission of Edwards's and Blackwell's certified convictions — clearly created an appearance of partiality, and such coaching has no place in a criminal trial. To the extent that the majority concludes otherwise (or minimizes the improper coaching), I strongly disagree.

That being said, it is well settled that "not every violation of the Code of Judicial Conduct implicates the constitutional guarantee of due process." *Cromer*, 348 Ga. App. at 117 (2) (citation and punctuation omitted). As the majority points out,

> the constitutional guarantee of due process is not concerned with mere appearances of partiality. To the contrary, due process is concerned with *actual* bias, and absent a showing of actual bias, due process requires recusal only in particular circumstances in which the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable.

*Pyatt*, 298 Ga. at 751 (5) (citations and punctuation omitted).

Instances of actual bias include when a judge has a direct or substantial pecuniary interest in the outcome of a case, when a judge has executive

5

responsibilities for the finances of an organization with a direct pecuniary interest in the outcome, when a person with a personal stake in a particular case had a significant influence in placing the judge on the case by raising funds or directing the judge's election campaign, when the judge personally was responsible for bringing the charges to be tried, or when a judge has been so personally vilified by a party charged with contempt that he necessarily becomes involved in a bitter controversy with the contemnor. *Pyatt*, 298 Ga. at 751-752 (5); *Cromer*, 348 Ga. App. at 117-118 (2); compare *Barnett v. State*, 300 Ga. 551, 555-556 (2) (796 SE2d 653) (2017) (trial judge's prior representation of a victim in an unrelated matter did not demonstrate actual bias). Here, there is no allegation or evidence that the trial judge had a personal or pecuniary interest in the case or any relationship with a party in the case such that Dukes's due process right was implicated due to actual bias on the part of the trial judge.

In the absence of actual bias, however, a reviewing court must determine whether a due process violation occurred by examining whether the "probability of actual bias" on the part of the trial judge "is too high to be constitutionally tolerable." *Pyatt*, 298 Ga. at 751 (5) (citation and punctuation omitted). This standard "asks not whether a judge harbors an actual, subjective bias, but instead whether, as an

6

objective matter, the average judge in his position is likely to be neutral, or whether there is an unconstitutional potential for bias." *Williams v. Pennsylvania*, 579 U. S. 1, 8 (II) (A) (136 SCt 1899, 195 LE2d 132) (2016) (citation and punctuation omitted); see also id. at 8-11 (II) (A) (an unconstitutional potential for bias occurs when a former prosecutor who made a critical decision in a case later serves as a judge in that case). "The alleged bias of the judge must be of such a nature and intensity to prevent the defendant from obtaining a trial uninfluenced by the court's prejudgment." *Barnett*, 300 Ga. at 554 (2) (citations and punctuation omitted). In this regard,

> the alleged bias must stem from an extra-judicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case. Any analysis of the necessity for recusal is necessarily fact-bound, requiring an examination of the nature and extent of any business, personal, social or political associations, and an exercise of judgment concerning just how close and how extensive (and how recent) these associations are or have been.

Id. (citations and punctuation omitted).

Here, although the trial judge's comments created an appearance of partiality, Dukes has failed to show a "probability of actual bias" that is "too high to be constitutionally tolerable." *Pyatt*, 298 Ga. at 751 (5) (citation and punctuation omitted). As the majority points out, the trial judge's comments and coaching in this

7

case appear more likely to stem from his frustration with the prosecutor's inexperience rather than any partiality in favor of the prosecution or against Dukes. Accordingly, I agree with the majority's ultimate conclusion in Division 3 that Dukes has failed to show bias sufficient to support a due process violation with respect to the trial judge's comments coaching the prosecutor in this case.